UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of North Dakota, et al., | Civil File No. 11-3232 SRN/SER |
| Plaintiffs, | **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| vs. | |
| Lori Swanson, Attorney General of the State of Minnesota, et al., | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs advance new Federal Power Act and Clean Air Act preemption theories that are not pled in their Amended Complaint. Plaintiffs' new preemption theories, along with those set forth in their Amended Complaint, fail as a matter of law because Minn. Stat. § 216H.03 does not regulate wholesale sales of electricity, interstate transmission, or interstate air emissions. Section 216H.03 is a lawful exercise of the State's authority over electric generation resources used by retail customers in Minnesota.

**ARGUMENT**

**I.     SECTION 216H.03 IS WITHIN MINNESOTA'S TRADITIONAL AUTHORITY TO DETERMINE THE TYPE OF GENERATION RESOURCES USED IN MINNESOTA.**

The regulation of utilities, the type of power used in a state, and the environment are areas of traditional state authority. Defs.' Mem. at 5-7 (Docket # 15). Because Section 216H.03 by its terms regulates electric power "consumed in Minnesota" from "new large energy facilit[ies]" that would contribute to "statewide power sector carbon

dioxide emissions," the presumption against preemption applies to Plaintiffs' challenge. Minn. Stat. § 216H.03 (2010); Defs' Mem. at 5-7.

Plaintiffs' arguments to the contrary are flat wrong. There is no requirement that a state statute be enacted before the relevant federal law for the presumption against preemption to apply. The Supreme Court has held that the presumption applies to "field[s] which the States have traditionally occupied" and has specifically applied the presumption to state utility laws that post-date the federal law. *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 194, 206 (1983) (applying presumption to California utility laws enacted many years after the Atomic Energy Act). Plaintiffs' reliance on *New York v. FERC*, 535 U.S. 1, 17-18 (2002) in arguing the contrary is misplaced because that case did *not* concern whether a state law was preempted, but rather examined FERC's interpretation of federal law. *Id*.

Likewise, Plaintiffs erroneously assert that the presumption against preemption does not apply because Section 216H.03 allegedly regulates generation facilities located in other states. Pls.' Mem. at 19 (Docket # 17). Section 216H.03 places no limits on activities in other states. It in no way precludes companies in other states from building new power plants, generating electricity, or emitting carbon dioxide. Section 216H.03 only regulates power "consumed in Minnesota" that would increase "statewide power sector carbon dioxide emissions." Minn. Stat. § 216H.03, subds. 1-4. The law precludes the use of such power in Minnesota, unless the emissions are offset. *Id.* Thus, the presumption against preemption applies with full force. In any event, Plaintiffs'

2

preemption arguments fail for the reasons previously discussed in Defendants' initial memorandum and those set forth below.

## II. SECTION 216H.03 IS NOT PREEMPTED BY THE FEDERAL POWER ACT.

As Plaintiffs themselves recognize, Section 216H.03 regulates the type of generation resources used in Minnesota. Indeed, it is precisely because of their concern that Section 216H.03 allegedly will limit the use of new coal-generated electricity in Minnesota that Plaintiffs have brought this lawsuit.[1]

Yet, in hopes of interfering with Minnesota's sovereign right to determine what type of electric generation resources are used by retail customers in the state, Plaintiffs try unsuccessfully to recast Section 216H.03 as regulating transmission and wholesale sales of electricity. Section 216H.03 does no such thing. Plaintiffs' arguments are based on mischaracterizations of Section 216H.03 and the Federal Power Act, and fail to recognize the purpose of the Minnesota statute.

### A. Section 216H.03 Does Not Regulate Wholesale Sales Of Electricity.

Plaintiffs argue at length in their memorandum that Section 216H.03 regulates wholesale sales of electricity in violation of the Federal Power Act. This claim is not, however, asserted in Plaintiffs' Amended Complaint. Instead, Plaintiffs' Amended Complaint asserts that Section 216H.03 violates the Federal Power Act *only* by regulating interstate transmission, which Defendants already addressed. Am. Compl. ¶¶ 104-118, 128-133 (Docket # 9); Defs.' Mem. at 5-19. Therefore, the Court should not consider

---

[1] Plaintiffs' discussion at pages 5-16 of their memorandum regarding the alleged burdens and harms associated with Section 216H.03 relates to their Commerce Clause claim. These allegations will be addressed when that claim is before the Court.

Plaintiffs' new Federal Power Act claim. *See Morgan Dist. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (stating "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also McClennon v. Kipke*, 2011 WL 5177393, at *7 (D. Minn., Oct. 31, 2011) (noting the "Court will not permit [the plaintiff] to re-cast the contours of [a] claim through his summary-judgment brief").[2]

If considered, Plaintiffs' new argument fails on the merits because Section 216H.03 does not regulate wholesale sales. By its plain language, Section 216H.03 only regulates Minnesotans' use of electricity from "new large energy facilit[ies]" and "new long-term power purchase agreement[s]" that would increase "statewide power sector carbon dioxide emissions." Minn. Stat. § 216H.03, subds. 1-4. The statute prohibits the use of such power in Minnesota unless the increased emissions are offset. *Id.* The statute includes the terms "long-term power purchase agreement" and "import" *solely* to specify which electricity "consumed in Minnesota" is subject to the statute. *Id.*, subd. 3.

Section 216H.03 does not set the price for any wholesale sales of electricity, or impose any terms on wholesale contracts, as Plaintiffs erroneously contend. The statute only limits the use of certain new power in Minnesota by retail customers.

---

[2] Plaintiffs also incorrectly assert that Defendants "ignored field preemption" with respect to the Federal Power Act. Pls.' Mem. at 31. Plaintiffs' Amended Complaint does not set forth a field preemption claim based on the Federal Power Act. Am. Compl. ¶¶ 104-118, 128-133. Plaintiffs' only field preemption claim relates to the Clean Air Act. *Id.* at ¶¶ 99-102.

Section 216H.03 is well within the scope of the State's authority over generation resources, as recognized by FERC in Order 888, because it regulates the type of power used by Minnesota retail customers. *See* FERC Order 888, 61 FR 21540, 21626 n.544. Plaintiffs' argument to the contrary fails to recognize that such generation resource decisions relate to local service.[3]  In addition, FERC has found that the States have authority to require the use of certain types of electric generation resources as long as they do not set rates charged by wholesale sellers. *Order on Complaint and Petition for Declaratory Order and Petition on Enforcement*, FERC Docket No. EL95-51-000, 78 FERC ¶ 61067, 1997 WL 34082 (FERC Order finding Iowa had authority to order electric utilities in Iowa to purchase renewable energy from wholesale generators but did not have authority to establish the rates paid for the power).  Section 216H.03 fully complies with the jurisdictional line drawn by the Federal Power Act and FERC.[4]

Plaintiffs' erroneous interpretation of Section 216H.03 as purportedly regulating wholesale sales in violation of the Federal Power Act would render meaningless Minnesota's authority to regulate retail sales and determine the type of generation resources used in the state.  Minnesota utilities commonly rely on power purchase

---

[3] Plaintiffs also fail to recognize that Minnesota's resource planning requirements apply not just to retail utilities but also to wholesale utilities.  Minn. Stat. § 216B.2422, subds. 1(b), 2 (2010) (providing the requirements apply to an "entity with the capability of generating 100,000 kilowatts or more of electric power and serving, either directly or indirectly, the needs of 10,000 retail customers in Minnesota").

[4] This case is fully distinguishable from the Federal Power Act cases cited by Plaintiffs. None of those cases involved a statute where the State was regulating the type of resources used in the state.  Rather, the cases cited by Plaintiffs involved regulation of wholesale sales or transmission.

agreements to obtain electricity used to serve their retail customers.[5]  In addition, the Minnesota Public Utilities Commission ("MPUC") has a history of reviewing such agreements to determine whether the power should be used in Minnesota.  *See, e.g., In re Northern States Power Co.*, 2002 WL 31040343 (Minn. P.U.C., July 17, 2002); *In re Northern States Power Co.*, 2004 WL 2663566 (Minn. P.U.C., Aug. 17, 2004) (order approving power purchase agreement).

If the States have no authority over electricity that is provided to retail customers pursuant to power purchase agreements as Plaintiffs assert, then the States would be hamstrung in their ability to regulate retail sales of electricity.  Yet, Congress clearly intended to preserve state authority over retail sales and resource generation decisions. *See* Defs.' Mem. at 7-8.  Thus, Plaintiffs' new Federal Power Act claim fails because Section 216H.03 does not regulate wholesale sales of electricity.

### B. Section 216H.03 Does Not Regulate Transmission.

Plaintiffs are also mistaken in arguing that Section 216H.03, subdivision 3(2) regulates the "transmission" of electricity in interstate commerce. Plaintiffs' reliance on the word "import" to make this argument is misplaced.  As discussed above, the word "import" is included in Section 216H.03 *only* to specify that the statute applies to Minnesotans' use of power generated at a "new large energy facility" in another state that would increase Minnesota's "statewide power sector carbon dioxide emissions," as well as to power generated at a "new large energy facility" in Minnesota.  Minn. Stat.

---

[5] Minnesota utilities also provide electricity from power plants that they own themselves, both inside and outside of Minnesota.

§ 216H.03, subd. 3. When Section 216H.03 is read as a whole, it is clear that the statute regulates the type of generation used in the state, not the transmission of the electricity itself. *See* Defs.' Mem. at 9-14.[6]

Plaintiffs' expansive reading of Section 216H.03 as regulating transmission in violation of the Federal Power Act also fails because this argument too would render meaningless Congress' preservation of the States' authority to regulate retail sales of electricity. Virtually all retail sales of electricity in the continental United States, with the exception of Texas, involve electricity that is transmitted in interstate commerce. *See New York v. FERC*, 535 U.S. at 7 (stating that due to the nature of the interconnected transmission grid, "electricity that enters the grid immediately becomes a part of a vast pool of energy that is constantly moving in interstate commerce"). If the States have no authority over electricity transmitted in interstate commerce, as Plaintiffs argue, then the States would have no authority to regulate retail sales of electricity. Plaintiffs' interpretation of Section 216H.03 and the Federal Power Act would thwart Congress' clear intent.

Finally, Plaintiffs' argument that Section 216H.03 conflicts with FERC's authority is also baseless. Plaintiffs have failed to identify any provision in any FERC order with which Section 216H.03 conflicts. There is no merit to Plaintiffs' assertion that further

---

[6] Plaintiffs' reliance, in their response memorandum, on the reference to "[e]missions of carbon dioxide associated with transmission and distribution line losses" in Section 216H.03, subdivision 2 is to no avail. The "line losses" referred to are losses of electricity along the lines, not of carbon dioxide. The language specifies that "statewide power sector carbon dioxide emissions" are to be calculated based on the amount of power generated to serve Minnesota customers, and includes any line losses. It does not regulate transmission facilities.

factual development is necessary to resolve the issue. Pls.' Mem. at 32. The FERC orders are legal authorities, not facts. The reason Plaintiffs have failed to identify any conflicting provision in any FERC order is because none exists.[7] In short, Section 216H.03 regulates generation resources, not transmission, and does so in a manner fully consistent with the Federal Power Act.

    **C.**    **Principles Of Statutory Construction Confirm That Section 216H.03 Regulates Generation Resources, Not Transmission Or Wholesale Sales.**

Even assuming Section 216H.03 is ambiguous, a proper construction of the law supports Defendants' position. *See Brayton v. Pawlenty*, 781 N.W.2d 357, 363-64 (2010) (noting principles of statutory construction guide a court's interpretation of an ambiguous statute). It is well established that statutes are to be interpreted to avoid a constitutional problem. *See Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn. 2001); *Martin v. City of Rochester*, 642 N.W.2d 1, 17 (Minn. 2002), *cert. denied*, 539 U.S. 957 (2003). Defendants' interpretation of Section 216H.03 avoids preemption, a constitutional problem, and therefore should be adopted by the Court.

Furthermore, "[t]he object of all interpretation and construction is to ascertain and effectuate the intent of the legislature." Minn. Stat. § 645.16 (2010). Defendants' interpretation of Section 216H.03 is the only interpretation that effectuates the legislature's intent to regulate the use of power "consumed in Minnesota" that would

---

[7] Likewise, Plaintiffs cite no support for their assertion that Congress has given FERC authority to ensure a sufficient supply of cost-effective and reliable energy. Pls.' Mem. at 18. It is the States, not FERC, that have this authority. *See* Defs' Mem. at 6-8. Plaintiffs also mischaracterize Section 216H.03 when they erroneously imply that it could result in insufficient generation resources.

increase "statewide power sector carbon dioxide emissions." Plaintiffs' assertion that the statute regulates wholly different matters, wholesale sales and transmission, fails to effectuate the statute's purpose.

The legislative history further confirms that Defendants' interpretation of Section 216H.03 is correct. The Minnesota House Research Act Summary for Laws 2007, Chapter 136, Article V, codified as Chapter 216H, states that a "new large energy facility" is defined as "an electric generating plant with a capacity of 50 megawatts or more that was not operating on January 1, 2007, excluding natural gas peaking and intermediate plants." 2007 House Research Act Summary, Chapter 136, Art. 5, Sec. 3, Subd. 1 (June 4, 2007) (available at *http://www.house.leg.state.mn.us/ hrd/as/85/as136.html*). The Summary makes no mention of transmission lines being part of a "new large energy facility." *Id.*

In sum, Section 216H.03 is reasonably interpreted as regulating Minnesotans' use of power from certain electric generating plants, not transmission or wholesale sales. Plaintiffs' Federal Power Act preemption claims must therefore be rejected based on fundamental principles of statutory construction.

**III.   SECTION 216H.03 IS NOT PREEMPTED BY THE CLEAN AIR ACT.**

In their Amended Complaint, Plaintiffs assert that through passage of the Clean Air Act, Congress occupied the field of all air emissions, including in-state emissions. On that basis, they claim that Section 216H.03 is preempted. Am. Compl. ¶¶ 99-103. Defendants refuted this argument, pointing to Congress' express preservation of state authority to adopt separate state regulations of air emissions. Defs.' Mem. at 19-24; 42

9

U.S.C. § 7416. In their response memorandum, Plaintiffs now seek to assert a new Clean Air Act claim. They argue that Section 216H.03 is preempted by the Clean Air Act because it allegedly regulates air emissions at power plants in other states, and does so without EPA approval. Pls.' Mem. at 33-41.

The Court should reject Plaintiffs' new Clean Air Act preemption claim for two reasons. First, Plaintiffs failed to include this claim in their Amended Complaint. Thus, the claim is not properly before the Court. *See Morgan Dist. Co.*, 868 F.2d at 995. Second, if addressed, Plaintiffs' new claim fails as a matter of law.

Contrary to Plaintiffs' assertion, Section 216H.03 does not regulate air emissions in other states. It regulates the type of power consumed in Minnesota. Minn. Stat. § 216H.03, subds. 1-4. The statute limits *the use in Minnesota of certain new power* from both in-state and out-of-state facilities. *Id.*, subd. 3 (providing no person shall "construct within [Minnesota]," "import" or "enter into a new long-term power purchase agreement"). Moreover, the offset provision in the statute applies to the Minnesota utility that seeks to "import" or "purchase" the power, not to the generation facility in the other state, as Plaintiffs erroneously suggest. *Id.*, subds. 3-4. Nothing in Section 216H.03 regulates the air emissions at the out-of-state plant where the power is produced or otherwise regulates air emissions in other states. *Id.* Under Section 216H.03, a power plant outside of Minnesota can emit an unlimited amount of carbon dioxide. *Id.*[8]

---

[8] Plaintiffs' reliance on *Clean Air Markets Group v. Pataki*, 338 F.3d 82 (2nd Cir. 2003) to suggest that Section 216H.03 conflicts with the Clean Air Act is misplaced. In *Clean Air Markets*, there was a clear conflict between the New York law and the nationwide "cap-and-trade" program for sulfur dioxide emissions established under the Clean Air

10

As noted in Defendants' initial memorandum, the only provision in Section 216H.03 that actually controls air emissions is the provision that restricts construction of certain "new large energy facilit[ies]" in Minnesota.  Defs.' Mem. at 22, n.10.  This provision is expressly limited to Minnesota.  Minn. Stat. § 216H.03, subd. 3(1).

Plaintiffs essentially concede that Section 216H.03 does not regulate emissions at power plants in other states when they assert that the salient provisions in Section 216H.03 regulate power imports, not the carbon dioxide emissions themselves.  Pls.' Mem. at 39 (asserting Section 216H.03 "is instead an interstate trade restraint").  Because Section 216H.03 does not regulate carbon dioxide emissions in other states, there simply is no basis for Plaintiffs' new Clean Air Act claim.

Furthermore, Plaintiffs are wrong when they suggest that Congress has occupied the field of carbon dioxide regulation and that the States have only a very limited role in regulating these emissions.  This argument fails because it relies on a mischaracterization of 42 U.S.C. § 7411(c).  This section simply provides that a State may implement and enforce any federal standards for stationary sources adopted by the EPA.  *Id.*, (b)-(c).  It does not preclude separate state regulations of carbon dioxide or any other air pollutant.  *Id.*  Even when EPA does adopt a new source performance standard for carbon dioxide emissions from power plants, the States will be free to enact more stringent standards.

---

Act.  *Id.* at 84-89.  No such federal program exists for carbon dioxide.  The Minnesota legislature did, however, recognize that Congress might in the future enact a national "cap-and-trade" system for carbon dioxide.  For that reason, Section 216H.03 includes language that the statute applies "[u]nless preempted by federal law."  To date, however, Congress has not acted to establish such a program.

11

42 U.S.C. § 7416. Plaintiffs' argument ignores Congress' express preservation of independent state authority. *Id.*

Nothing in the Clean Air Act requires prior EPA approval of independent state regulations. *See* 42 U.S.C. §§ 7411, 7416. Nor is there any requirement that the EPA act first before the States can enact their own air emissions regulations, as Plaintiffs erroneously imply. In fact, consistent with the Clean Air Act, the States can regulate in areas where the EPA has not specifically acted. For example, several northeastern States have established a regional greenhouse gas program that includes a mandatory market-based "cap-and-trade" system, designed to reduce carbon dioxide emissions in the region in advance of any EPA action. *See*, *e.g.*, 7 Del. Code §§ 6043-47 (2012) (Regional Greenhouse Gas Initiative and CO2 Emission Trading Program Subchapter). Likewise, Minnesota has adopted ambient air quality standards for hydrogen sulfide, while EPA has not. *See* Minn. R. 7009.0080 (2011).

Finally, the cases cited by Plaintiffs to argue that the States have limited authority to enact separate carbon dioxide emissions regulations do not support their position. Pls.' Mem. at 34, 37. These cases address whether a State can bring federal or state common law nuisance claims to address carbon dioxide emissions from power plants. *See American Elec. Power Co., Inc. v. Connecticut*, 131 S.Ct. 2527, 2537-41 (2011) (addressing whether states can bring a federal common law nuisance claim); *North Carolina ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291, 296 (4th Cir. 2010) (addressing a public nuisance claim under state common law). They do not address the preservation of state authority under 42 U.S.C. § 7416, much less a state law like

Section 216H.03 that regulates the type of power used by retail customers in the state.  In sum, there is no support for any of Plaintiffs' Clean Air Act preemption claims.

### IV. PLAINTIFFS' PRIVILEGES AND IMMUNITIES AND DUE PROCESS CLAIMS, AS WELL AS THEIR INCLUSION OF THE ATTORNEY GENERAL AS A DEFENDANT, HAVE NO LEGAL BASIS.

Plaintiffs' response memorandum provides no basis to avoid dismissal of the other claims addressed in Defendants' motion for judgment on the pleadings — the claim that Section 216H.03 violates the Privileges and Immunities Clause because it allegedly reduces employment opportunities for North Dakotans in their state; the claim that Section 216H.03 violates federal due process because it violates the Minnesota Constitution's prohibition against special legislation; and the assertion that the Attorney General may be included as a defendant in this lawsuit under the *Ex parte Young* exception to Eleventh Amendment immunity.

#### A. The Privileges And Immunities Clause Claim Has No Legal Basis.

Plaintiffs cite no case holding that the Privileges and Immunities Clause applies to a state law that allegedly diminishes employment opportunities for nonresidents in the nonresidents' state.  There simply is no authority for the notion that Section 216H.03 can violate the Clause by affecting employment opportunities in North Dakota.

As discussed in Defendants' initial memorandum, the Privileges and Immunities Clause could be implicated only if Section 216H.03 discriminated against North Dakota residents in obtaining employment within Minnesota.  Plaintiffs make no argument that the statute imposes such discrimination, and, indeed, it plainly does not.

13

### B. The Purported Due Process Claim Does Not Avoid The *Pennhurst* Bar.

Plaintiffs wrongly assert that the alleged violation of the Minnesota Constitution's prohibition against special legislation is a "defect in the legislative process" that prevents their supposed due process claim from being barred by *Pennhurst*. A "defect in the legislative process" does not refer to a law violating a substantive limitation, such as Minnesota's prohibition against special legislation. The concept is one of procedural due process. Originating in *Atkins v. Parker*, 472 U.S. 115, 130 (1985), it refers only to a failure to follow legislative procedures that could nullify the principle that the legislative determination itself provides all the process due to persons whose property interests are affected by a new statute. *See id.* at 129-30 (holding that, absent defect in the legislative process, persons whose food-stamp benefits were reduced by a federal statutory amendment had no basis for a procedural due process challenge to the reduction). Plaintiffs make no contention that proper legislative procedures were not followed in the enactment of Section 216H.03 and, indeed, there is no basis for such a contention.

Plaintiffs cite no case expanding "defect in the legislative process" to include a claim that a state statute violates a substantive prohibition in the state constitution. Even more to the point, Plaintiffs identify no authority that such a claim can be brought against state officials in federal court. As discussed in Defendants' initial memorandum, it is well established that under *Pennhurst* the Eleventh Amendment precludes a federal court from deciding whether a state law violates the state constitution.

### C.  The Attorney General Is Not A Proper Party Under *Ex Parte Young*.

Contrary to Plaintiffs' contention, subdivision 8 of Section 216H.03 does not give the Attorney General an independent and specific authority to enforce Section 216H.03 that satisfies *Ex parte Young*'s first prong.  Plaintiffs rely on a partial reading of the second sentence in subdivision 8, which in its entirety states: "This section may be enforced by the attorney general on the same basis as a law listed in section 8.31, subdivision 1, *except that the remedies provided by section 8.31, subdivision 3a, do not apply* to a violation of this section."  Minn. Stat. § 216H.03, subd. 8 (emphasis added). Read in its entirety, and in conjunction with the first sentence of subdivision 8, the second sentence's reference to Minn. Stat. § 8.31 simply identifies the remedies the Attorney General may seek in bringing a legal action that is referred to her by the Public Utilities Commission or the Department of Commerce to enforce Section 216H.03.  *See* Minn. Stat. § 8.31, subd. 3 (2010) (providing for injunction and civil penalties).

Section 8.31 does not otherwise provide a basis to sue the Attorney General because it concerns her general authority to enforce state statutes.  A general authority to enforce state law, or to advise or appear on behalf of state agencies, is insufficient to satisfy *Ex parte Young*'s first prong.  *See Minnesota Citizens Concerned for Life, Inc. v. Swanson*, No. 10-2938, 2011 WL 797462, at *3 (D. Minn. Mar. 1, 2011) (recognizing this principle); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 399-402 (4th Cir. 2010) (same and canvassing cases).

Finally, Plaintiffs are mistaken in suggesting that they need not also satisfy *Ex parte Young*'s second prong.  As noted in Defendants' initial memorandum, even if the

first prong is met, Plaintiffs must show that the Attorney General is threatening to enforce the challenged statute against them in order to make her a proper defendant. *Reproductive Health Servs. v. Nixon*, 428 F.3d 1139, 1145-46 (8th Cir. 2005).

## CONCLUSION

For the above reasons and those set forth in Defendants' initial memorandum of law, Defendants respectfully request that the Court grant their motion for partial judgment on the pleadings. The Court should dismiss Counts II through VI of Plaintiffs' Amended Complaint and the Attorney General as a defendant.

Dated:  March 29, 2012

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

s/**Jeanne M. Cochran**
Jeanne M. Cochran
Assistant Attorney General
Atty. Reg. No. 0246116
jeanne.cochran@ag.state.mn.us

John S. Garry
Assistant Attorney General
Atty. Reg. No. 0208899
john.garry@ag.state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, MN 55101-2128
Telephone: (651) 757-1217

ATTORNEYS FOR DEFENDANTS