UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| State of North Dakota, | ) | No.: 11-CV-3232 (SRN/SER) |
| Industrial Commission of North Dakota, | ) | |
| Lignite Energy Council, | ) | |
| Basin Electric Power Cooperative, | ) | |
| The North American Coal Corporation, | ) | |
| Great Northern Properties Limited | ) | |
| Partnership, Missouri Basin Municipal | ) | |
| Power Agency d/b/a Missouri River | ) | |
| Energy Services, Minnkota Power | ) | |
| Cooperative, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM** |
| v. | ) | **OF LAW IN OPPOSITION TO** |
| | ) | **MOTION FOR PERMISSIVE** |
| Lori Swanson, Attorney General of the | ) | **INTERVENTION OF** |
| State of Minnesota, | ) | **MINNESOTA CENTER FOR** |
| Beverly Heydinger, Commissioner and | ) | **ENVIRONMENTAL** |
| Chair, Minnesota Public Utilities | ) | **ADVOCACY,** |
| Commission, | ) | **ENVIRONMENTAL LAW &** |
| David C. Boyd, Commissioner, | ) | **POLICY CENTER,** |
| Minnesota Public Utilities Commission, | ) | **ENVIRONMENTAL DEFENSE** |
| Phyllis Reha, Commissioner and Vice | ) | **FUND, SIERRA CLUB,** |
| Chair, Minnesota Public Utilities | ) | **NATURAL RESOURCES** |
| Commission, | ) | **DEFENSE COUNCIL, FRESH** |
| J. Dennis O'Brien, Commissioner, | ) | **ENERGY AND IZAAK WALTON** |
| Minnesota Public Utilities Commission, | ) | **LEAGUE OF AMERICA** |
| Betsy Wergin, Commissioner, Minnesota | ) | |
| Public Utilities Commission, and | ) | |
| Mike Rothman, Commissioner, | ) | |
| Minnesota Department of Commerce, | ) | |
| each in his or her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

Plaintiffs State of North Dakota, Industrial Commission of North Dakota, Lignite Energy Council, Basin Electric Power Cooperative, The North American Coal Corporation, Great Northern Properties Limited Partnership, Missouri Basin Municipal Power Agency d/b/a/ Missouri River Energy Services, and Minnkota Power Cooperative, Inc. (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the Minnesota Center for Environmental Advocacy's, Environmental Law & Policy Center's, Environmental Defense Fund's, Sierra Club's, Natural Resources Defense Council's, Fresh Energy's and Izaak Walton League of America's (collectively, "Environmental Policy Groups") motion for permissive intervention, and request that the motion be denied.

The Environmental Policy Groups that move for permissive intervention in the instant lawsuit seek to shape public policy in accordance with their views and opinions. These Environmental Policy Groups certainly have every right to express their viewpoints in the appropriate forum. In fact, as they have pointed out in their submissions, these groups had the opportunity to advocate their views and opinions in the lobbying process that eventually resulted in the enactment of the Next Generation Energy Act ("NGEA"). (Environmental Policy Groups' Memo. Of Law (Doc. No. 35) at 3) However, an interest group's activities in supporting legislation does not create a sufficient interest to participate in litigation involving a statute once it has been enacted. In this case, the Environmental Policy Groups' general interests in public policy do not translate into standing to intervene in a lawsuit between Plaintiffs—who are the subject

of the NGEA's restrictions and victims of its adverse effects—and the named defendants—in whom the Minnesota Legislature has expressly placed responsibility for enforcing those restrictions (collectively, "Defendants").

As the Eighth Circuit has stated on more than one occasion, "a federal case is a limited affair, and ***not everyone with an opinion is invited to attend.***" *Curry v. Regents of University of Minnesota,* 167 F.3d 420, 423 (8th Cir. 1999) (quoting *Mausolf v. Babbitt,* 85 F.3d 1295, 1301 (8th Cir. 1996))(emphasis added). Here, the Environmental Policy Groups have not established that their general interests in advocating their opinions and viewpoints justify intervention, nor have they shown that their interests will not be adequately represented by the named Defendants in this case. Accordingly, their motion should be denied.

## ARGUMENT

First and foremost, the Environmental Policy Groups have entirely failed to establish that they have independent Article III standing. The Eighth Circuit requires parties who seek permissive intervention to establish they have independent standing. Plaintiffs have not even attempted to demonstrate independent standing and there is no reason to expect that they could establish standing.

Second, even if the Environmental Policy Groups could satisfy the threshold standing requirement, they have not established that, as proposed interveners, they have any interests that are different or unique from the broad public interests that are already represented by the named Defendants. The law in the Eighth Circuit provides a strong presumption that governmental parties such as Defendants will adequately represent the

public's interests. The Environmental Policy Groups have offered no evidence to rebut this strong presumption. Indeed, there is no basis to doubt that Defendants are fully capable of defending the constitutionality of the NGEA. Unlike cases where intervention is occasionally granted, this case does not involve government defendants who are either unable or unwilling to defend the statute at issue, and the proposed interveners have not established they have discrete and protectable interests or additional claims and defenses that will not be properly asserted and advocated by the existing Defendants.

Based on the foregoing, the Environmental Policy Groups' involvement as parties in this litigation would only add burden, expense, and delay in the adjudication of Plaintiffs' straightforward constitutional challenge to the NGEA. The instant case already includes Plaintiffs who are negatively impacted by the Next Generation Energy Act and the Defendants whom the Minnesota Legislature has expressly tasked with enforcing the NGEA. Defendants have already demonstrated their intention to aggressively defend the validity of the NGEA by, among other things, bringing an early motion to dismiss. There is no reason to expect that their zealous advocacy will not continue, and the Environmental Policy Groups have offered no reason to doubt that Defendants will continue to vigorously litigate the interests that purportedly underlie the NGEA. Accordingly, there is no good reason to add seven additional parties to this litigation and, correspondingly, increase the volume of discovery, motion practice, costs, delay, and other unnecessary burdens on Plaintiffs and the Court.

Clearly, the Environmental Policy Groups have strong opinions and a preferred result as to the outcome of this litigation. But they have no independent standing, and

they have no unique interests that are not already adequately represented by the named Defendants. Therefore, the Environmental Policy Groups' motion for permissive intervention should be denied.

## I. THE ENVIRONMENTAL POLICY GROUPS' MOTION FOR PERMISSIVE INTERVENTION MUST BE DENIED BECAUSE THEY HAVE NOT AND CANNOT ESTABLISH INDEPENDENT ARTICLE III STANDING

Article III standing is a prerequisite for intervention in a federal lawsuit. *Curry v. Regents of University of Minnesota,* 167 F.3d 420, 422 (8th Cir. 1999). Such standing requires (1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized, and is either actual or imminent; (2) causation; and (3) redressability. *Id.* This independent standing requirement applies to both intervention as a matter of right and permissive intervention. *Id.* at 423.

Standing is required because, "while Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties' in others' lawsuits, the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Curry,* 167 F.3d at 423 (quoting *Mausolf,* 85 F.3d at 1301).

Thus, it is not enough to have strong opinions about the potential outcome of a case. For permissive intervention, the proposed interveners must have concrete and particularized interests that transcend opinions and preferences.

Here, the Environmental Policy Groups have simply failed to address the need for independent standing, and they have presented no evidence, allegations, or argument

demonstrating how they have Article III standing. The Environmental Policy Groups'

failure to establish independent standing requires denial of their motion to intervene.

## II. APART FROM THEIR LACK OF STANDING, THE ENVIRONMENTAL POLICY GROUPS HAVE ALSO FAILED TO REBUT THE STRONG PRESUMPTION THAT THE NAMED DEFENDANTS WILL ADEQUATELY REPRESENT THEIR INTERESTS

Even assuming the Environmental Policy Groups have standing—which they have

not established—permissive intervention is properly denied where the proposed

interveners raise no claims or defenses that are different or unique from those of the

existing parties and where the additional parties would only be a source of repetition and

delay. *Standard Heating and Air Conditioning v. City of Minneapolis,* 137 F.3d 567, 573

(8th Cir. 1998). Rule 24(b)(2) requires a "claim or defense that shares with the main

action a common question of law or fact" for permissive intervention. As the text states

and as case law demonstrates, the "question of law or fact" must be shared and common,

but the particular claims or defenses should be unique to the intervener. In *Standard

Heating and Air Conditioning*, then Magistrate Judge Lebedoff and Judge Doty

recognized this distinction in denying a motion for permissive intervention, and this

decision was affirmed by the Eighth Circuit. 137 F.3d at 573.

The Eighth Circuit has made it very clear that, in cases where a government entity

or officer is a party, permissive intervention is generally disfavored because the

government is presumed to adequately represent the interests of the public and the

citizenry. *See Curry,* 167 F.3d at 423 (citing *Mausolf,* 85 F.3d at 1303) ("When a

government entity is a party and the case concerns a matter of sovereign interest, the

government is presumed adequately to represent the interests of the public."); *see also Vonage Holdings Corp. v. Nebraska Public Service Comm'n,* 543 F. Supp. 2d 1062, 1070-1071 (D. Neb. 2008), *aff'd* 564 F.3d 900 (8th Cir. 2008). This presumption may only be rebutted "by a ***strong showing*** of inadequate representation." *Curry,* 167 F.3d at 423 (emphasis added).

Here, there is no evidence whatsoever that Defendants cannot adequately represent the interests that underlie the NGEA. The Environmental Policy Groups have not even made such an argument, and Defendants certainly have not given any indication they will not or cannot adequately represent the public's interests and the objectives that purportedly underlie the NGEA.

### A. Intervention Is Not Appropriate Where Governmental Entities And Officers Are Already Named Parties And The Proposed Interveners' Purported Interests Are The Same As the General Citizenry.

A "strong showing" of inadequate representation would require, for example, demonstrating that the intervener has a unique interest "which cannot be subsumed within the interest of the citizenry." *Curry,* 167 F.3d at 423. However, the Environmental Policy Groups have not and cannot identify any interest they have which is not subsumed within the broader public interest purportedly advocated by Defendants.

Throughout their motion, the Environmental Policy Groups simply espouse their interests in broad public policies directed towards reducing emissions and curbing global warming. (Environmental Policy Groups' Memo. Of Law (Doc. No. 35) pp. 2-6 & 9-11; Decl. of Annie Sarver-Bodoh (Doc. No. 36-1) ¶¶ 3-4; Decl. of Jill Geiger (Doc. No. 36-2) ¶¶ 3-5; Decl. of John Smith (Doc. No. 36-3) ¶¶4-5; Decl. of Linda Lopez (Doc. No. 36-

4) ¶¶ 3-4; Decl. of Bruce Nilles (Doc. No. 36-5) ¶¶ 4-5; Decl. of Jenna Hartwig Wade (Doc. No. 36-6) ¶ 3; Decl. of Mary Ruben (Doc. No. 36-7) ¶¶ 4-5[1]) None of the Environmental Policy Groups have identified any particularized interest in these matters that differ or are unique from the interests of the general citizenry.

In short, the Environmental Policy Groups' interest in this litigation is based on their broad public policy goals and agendas regarding emissions and global warming, rather than any particular or specific interest that is unique to themselves or Minnesota's citizenry.

Further, it bears noting that the majority of the Environmental Policy Groups have little to no connection with Minnesota or North Dakota, and most of these Environmental Policy Groups do not appear to have any substantial Minnesota-based membership. For example, the Environmental Law & Policy Center ("ELPC") is an Illinois entity and apparently does not have any members, let alone members in Minnesota or North Dakota. Instead, ELPC evidently has a mailing list of 20,500 people nationwide (referred to as "allied advocates") to whom it distributes information. (Decl. of Jill Geiger (Doc. No. 36-2), ¶5.) Less than 1.5% of the recipients live in Minnesota and less than .3% of the recipients live in North Dakota. (*Id.*) ELPC claims it "has or had offices" in various

---

[1] The Declaration of Mary Rubin of the Izaak Walton League of America omits to mention the fact that the current Deputy Commissioner of Energy and Telecommunications for the Minnesota Department of Commerce is Bill Grant who, prior to his appointment, had worked as an executive of the Izaak Walton League of America for nearly 20 years. Thus, it would hardly seem to be necessary for the Izaak Walton League of America to intervene in order to have the interests it advocates well known to the Defendant Commissioner of the Minnesota Department of Commerce.

locations, including Minnesota (*Id.*, ¶2.)  However, according to its website, it does not currently have a Minnesota office.

Many of the other Environmental Policy Groups are also national organizations with a *de minimis* membership in either Minnesota or North Dakota.  For example, the Environmental Defense Fund is a membership organization incorporated in New York. (Decl. of John Stith (Doc. No. 36-3), ¶3.)  It purportedly has 360,000 members, but less than 2% of those reside in Minnesota and less than 0.3% of them reside in North Dakota. (*Id.* ¶7.)  The Natural Resources Defense Council is a New York incorporated membership organization with 364,000 members, approximately 2.1% of whom reside in Minnesota and substantially less in North Dakota.  (Decl. of Linda Lopez (Doc. No. 36-4), ¶2, 6.)  The Sierra Club is a national membership organization with approximately 619,000 members, approximately 2.2% of whom reside in Minnesota and less than .1% of whom reside in North Dakota.  (Decl. of Bruce Nile (Doc. No. 36-5), ¶3, 7.)

In any event, the Environmental Policy Groups have not overcome the strong presumption that the governmental Defendants—who have the legislatively conferred responsibility for enforcing the NGEA—will adequately represent the public's interests, and therefore the Environmental Policy Groups have failed to establish their intervention is needed in this case.

**B.** **Courts Commonly Deny Motions To Intervene In These Kinds Of Circumstances Where The Proposed Interveners Do Not Have Unique Interests And Instead Are Seeking To Use The Courts To Advocate Their General Policy Views And Agendas.**

Not surprisingly, environmental interest organizations such as the Environmental Policy Groups commonly seek to intervene in litigation—and federal courts commonly and correctly deny such motions because the United States courts are not the proper forum for these groups to inject their policy arguments. *See, e.g., Kane County, Utah v. U.S.,* 597 F.3d 1129, 1136 (10th Cir. 2010) (affirming denial of motion to intervene where environmental groups, including Sierra Club, "did not share any claim or defense in the action that was different from any other member of the public who care deeply about the outcome of the litigation" and allowing the environmental groups to intervene "would be an invitation to any member of the public who holds strong views about the outcome to seek to intervene."); *U.S. v. 36.96 Acres of Land, More or Less, Situated In County of LaPorte, State of Indiana,* 754 F.2d 855, 860 (7th Cir. 1985) (affirming denial of environmental groups' motion to intervene); *Maine v. Norton,* 203 F.R.D. 22, 30 (D.Me. 2001) (denying motion to intervene by environmental groups where "adding another party to the case to assert the same arguments would only result in delay and complication of the proceedings without serving to advance additional rights"); *Hage v. U.S.,* 35 Fed. Cl. 737, 742 (Fed. Cl. 1996) (denying motion to intervene by environmental groups, including Sierra Club, where "intervention would not serve the interests of judicial economy because the applicants merely argue issues raised by the primary parties.").

As previously noted, "a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Curry,* 167 F.3d at 423. This is particularly true in the instant case where the Environmental Policy Groups are seeking to advocate interests and make arguments that correspond with the interests and arguments that will be advocated by the named governmental Defendants. Accordingly, the Court should deny the Environmental Policy Groups' motion for permissive intervention.

C. **The Cases Cited By The Environmental Policy Groups Do Not Support Permissive Intervention In This Case.**

The Environmental Policy Groups cite to a handful of cases purportedly demonstrating their familiarity with and expertise in litigation involving environmental issues. These cases are irrelevant to the substance of this motion—and they certainly do not rebut the Eighth Circuit presumption that the named Defendants in this case are already adequately representing the interests that the Environmental Policy Groups seek to represent in this litigation.

In the Eighth Circuit, the fact that the proposed interveners claim to have certain expertise and experience does not demonstrate the governmental parties named in the lawsuit do not themselves have sufficient expertise and experience, or that those governmental defendants are not capable of adequately representing those interests. Indeed, this Court can fairly assume Defendants possess the requisite expertise and experience concerning the restrictions imposed by the NGEA. The Minnesota Legislature certainly considered them to be sufficiently knowledgeable and competent as evidenced by the fact the Legislature entrusted the Defendants with responsibility to

enforce the NGEA.  Likewise, Defendants' counsel certainly has the requisite experience and competence to defend the constitutionality of that statute.  The Environmental Policy Groups have identified no case law or any other authority to support the notion that their own preferred experience is a compelling factor in the permissive intervention inquiry.

Ultimately, the Environmental Policy Groups cite only three cases to support their argument that intervention should be allowed here—*Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1110-11 (9th Cir. 2002); *Am. Tradition Inst. v. Colorado,* No. 11-cv-00859, WJM-BNB, 2012 WL 555513 (D. Colo. Feb. 21, 2012); and *Animal Prot. Inst. v. Merriam,* 242 F.R.D. 524, 529 (D. Minn. 2006).  Unlike the Eighth Circuit case law cited by Plaintiffs in opposition to the Environmental Policy Groups' motion for permissive intervention, these cases cited by the Environmental Policy Groups are not binding authority on this Court.  And, in any event, the Environmental Policy Groups' cases are all readily distinguishable.

*Kootenai* is a Ninth Circuit case that involved a lawsuit brought by the State of Idaho, a Native American tribe, Idaho counties and various recreational groups against the U.S. Department of Agriculture and the U.S. Forest Service challenging a roadless area conservation rule.[2]  The plaintiffs in *Kootenai* claimed, *inter alia,* that the rule violated the National Environmental Policy Act and the Administrative Procedure Act

---

[2] The rule effectively banned road building on 58.5 million acres of national forest.  In the words of the Ninth Circuit, "[h]enceforth, this vast nation forest acreage, for better or worse, was more committed to pristine wilderness, and less amenable to road development for purposes permitted by the Forest Service."  *Kootenai,* 313 F.3d at 1106.

because it had been promulgated without proper process and was therefore invalid. *Kootenai,* 313 F.3d at 1104. Various environmental groups moved for permissive intervention to defend the rule. *Id.* The motion was granted by the district court. *Id.* at 1106. Ultimately, the Ninth Circuit affirmed the intervention finding no abuse of discretion. *Id.* at 1111. However, there was one critical fact noted by the Ninth Circuit that is absent here—specifically, in *Kootenai* the government had expressly declined to fully defend the roadless rule because the government itself wanted the rule amended. *Id.* Thus, unlike this case, the interests of the government and the interveners did not directly align in *Kootenai*—and unlike the instant case, in *Kootenai* the government expressly stated it would not represent the interests that the interveners sought to represent.

The Environmental Policy Groups also rely heavily on the unpublished District of Colorado opinion, *American Tradition Institute v. Colorado.* There, the court's brief opinion offered little insight into its reasoning. But significantly, as in *Kootenai,* the Court found that the government would not adequately represent the interveners interests. 2012 WL 555513, at *2. This holding was based on an apparent presumption that exists in the Tenth Circuit that "government defendants often cannot adequately represent the interests of non-governmental organizations." *Id.* (citing *National Farm Lines v. Interstate Commerce Comm'n,* 564 F.2d 381, 384 (10th Cir. 1977)). This Tenth Circuit presumptions is exactly opposite to the strong presumption that exists under Eighth Circuit law that governmental parties will adequately represent the public's interests and the interests of the citizenry, and that this presumption of adequate representation may only be rebutted through a "strong showing" that the governmental parties will not or

cannot inadequately represent those interests.  Thus, the central legal basis upon which intervention was granted in *American Tradition Institute* is not a valid legal basis under Eighth Circuit law.

The last case cited by the Environmental Policy Groups is *Animal Protection Institute,* 242 F.R.D. 524.  There, then Chief Magistrate Judge Erickson held that various associations of wildlife trappers could intervene in an action initiated by an environmental group claiming the Minnesota Department of Natural Resources ("DNR") had authorized certain trapping and snaring activities in violation of the Endangered Species Act.  *Id.* at 529.  However, unlike the Environmental Policy Groups here, the trapper interveners had a unique interest that was much more narrow than that of the governmental agency—specifically, the trappers had an interest in participating in then lawful practices of snaring non-protected wildlife.  *Id.*  The Court recognized that "the State has no particular interest in preserving the rights of trappers to continue in those practices, or to ensure that the equipment, which is now lawfully employed by the Association's members, will remain available in the future."  *Id.*  Thus, the interveners had stated a particular and discrete interest that would not necessarily be represented by the government and the presumption of adequate representation was rebutted.  Here, in stark contrast, the proposed interveners have identified no such unique or particularized interest.

It is clear that the Environmental Policy Groups have no interests that differ from the interests that the named Defendants are responsible for representing and advocating,

and the Environmental Policy Groups have made no showing that the Defendants are incapable of representing those interests.[3]

   **D.    Intervention By The Environmental Policy Groups Can Only Add Delay, Expense, And Other Unnecessary Burdens In This Case.**

Ultimately, the Environmental Policy Groups' interest in intervening is based on nothing more than their strong opinions about how this case should be decided. Such opinions are insufficient to justify the complications that are likely to result from intervention. There is no need to add seven additional parties and their various lawyers to this case, particularly given the Eighth Circuit law that clearly presumes the governmental Defendants who are already named parties—and in whom the Minnesota Legislature expressly conferred responsibility for enforcing the NGEA—will adequately represent the very interests that the Environmental Policy Groups intend to advocate.

Thus, there is no good reason to impose upon Plaintiffs and the Court the additional burden, delay, and expense associated with the Environmental Policy Groups' intervention. In addition to the burdens and delay inherent in adding parties more than a year after the litigation has been commenced, there will undoubtedly be burdens and

---

[3] The Environmental Policy Groups have pointed out that some of the proposed interveners were permitted to intervene in *Rocky Mountain Farmer's Union v. Goldstene*, which is pending in federal court in California. (Environmental Policy Groups' Memo. Of Law (Doc. No. 35) pp. 6-7) However, they omit to explain they were permitted to intervene by virtue of a stipulated order which strictly limits their involvement and participation in those proceedings to filing motions and briefs "only if the Defendant refuses to make an argument that [the interveners] consider relevant." (*Rocky Mountain Farmer's Union v. Goldstene*, Court File No. 09-cv-02234-LJO-GSA (E.D. Cal.), Doc. 27 & 97)

delays associated with discovery and motion practice moving forward.  More parties and more attorneys will undoubtedly mean more discovery (both in terms of the number of requests and the volume of information exchanged), more discovery disputes, more meet-and-confer obligations, and more motions.

Because the Environmental Policy Groups' intervention could only result in additional expense, delay, and other unnecessary burdens, without any showing that the currently named governmental Defendants cannot or will not adequately represent the public interests in this matter, the Environmental Policy Groups' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Environmental Policy Groups' motion for permissive intervention be denied.

Dated:  December 3, 2012

s/Brent A. Lorentz
Wayne Stenehjem
Attorney General of North Dakota
    Pro Hac Vice
John A. Knapp
    Special Assistant Attorney General
    Minnesota Bar No. 56789
Thomas H. Boyd
    Special Assistant Attorney General
    Minnesota Bar No. 200517
Daniel J. Kelly
    Special Assistant Attorney General
    Minnesota Bar No. 351386
Brent A. Lorentz
    Special Assistant Attorney General
    Minnesota Bar No. 386865
Suite 3500
225 South Sixth Street
Minneapolis, MN 55402-4629
612-604-6400

*Counsel of Record for Plaintiffs State of North Dakota and Industrial Commission of North Dakota.*

WINTHROP & WEINSTINE, P.A.


s/Brent A. Lorentz
John A. Knapp
    Minnesota Bar No. 56789
Thomas H. Boyd
    Minnesota Bar No. 200517
Daniel J. Kelly
    Minnesota Bar No. 351386
Brent A. Lorentz
    Minnesota Bar No. 386865
Suite 3500
225 South Sixth Street
Minneapolis, MN 55402-4629
612-604-6400

*Counsel of Record for Plaintiffs Lignite Energy Council, Basin Electric Power Cooperative, The North American Coal Corporation, Great Northern Properties Limited Partnership, Missouri Basin Municipal Power Agency d/b/a  Missouri River Energy Services, Minnkota Power Cooperative, Inc.*


Claire M. Olson
Casey Jacobson
Basin Electric Power Cooperative
Office of General Counsel
1717 East Interstate Avenue
Bismarck, ND 58503-0564
Phone:  (701) 557-5317

*Attorneys for Basin Electric Power Cooperative*

John Neumann
Thomas Koza
The North American Coal Corporation
5340 Legacy Drive, Building 1, Suite
300
Plano, TX 75024
Phone: (972) 448-5400

*Attorneys for The North American Coal Corporation*


Sandi Tabor
Lignite Energy Council
1016 East Owens Avenue
PO Box 2277
Bismarck, ND 58502
Phone: (701) 258-7117

*Attorney for The Lignite Energy Council*


William Taylor
Woods, Fuller, Shultz and Smith
300 S. Phillips Ave., Suite 300
P.O. Box 5027
Sioux Falls, SD 57117-5027
Phone: (605) 336-3890

*Attorneys for Missouri Basin Municipal Power Agency d/b/a Missouri River Energy Services*

David Sogard
Minnkota Power Cooperative, Inc.
P.O. Box 13200
Grand Forks, ND 58208-3200
Phone: (701) 795-4210

*Attorney for Minnkota Power Cooperative, Inc.*

Wyatt Hogan
Great Northern Properties L.P.
601 Jefferson Street
Suite 3600
Houston, TX 77002
Phone:  (713) 751-7500

*Attorney for Great Northern Properties Limited Partnership*

7459174v3