UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State of North Dakota, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Beverly Heydinger, et al., <br><br> Defendants. | Case No. 11-cv-3232 (SRN/SER) <br><br><br> **ORDER AFFIRMING MAGISTRATE JUDGE ORDER DATED DECEMBER 21, 2012** |

John A. Knapp, Thomas H. Boyd, Daniel J. Kelly, and Brent A. Lorentz, Winthrop & Weinstein, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629; Casey Jacobson and Claire M. Olson, Basin Electric Power Cooperative, Office of General Counsel, 1717 East Interstate Avenue, Bismarck, ND 58503-0564; David Sogard, Minnkota Power Cooperative, Inc., PO Box 13200, Grand Forks, ND 58208; Wayne K. Stenehjem, Office of the Attorney General, State of North Dakota, 600 East Boulevard, 1st Floor, Bismarck, ND 58505-0040; Sandra Tabor, The Lignite Energy Council, 1016 East Owens Avenue PO Box 2277, Bismarck, ND 58502; and William Taylor, Woods Fuller Schultz & Smith, 300 South Phillips Avenue Suite 300, P.O. Box 5027, Sioux Falls, SD 57117-5027, for Plaintiffs.

Lisa A. Crum and John S. Garry, Office of the Attorney General, State of Minnesota, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128, for Defendants.

Elizabeth I. Goodpaster and Scott R. Strand, Minnesota Center for Environmental Advocacy, 26 East Exchange Street, Suite 206, St. Paul, MN 55101; Sean H. Donahue, Environmental Defense Fund, Donahue & Goldberg LLP, 2000 L Street NW, Suite 808, Washington, DC 20036; Joanne Spalding and Robb Kapla, Sierra Club, 85 Second Street San Francisco, CA 94105; Benjamin Longstreth, Natural Resources Defense Council, 1152 15th Street NW, Suite 300, Washington, DC 20005; Howard A. Learner, Environmental Law & Policy Center, 35 E. Wacker Drive, Suite 1600, Chicago, IL 60601, for Movants.

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on the Objections of the Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America's (collectively "Movants") and the Commissioners of the Minnesota Public Utilities Commission ("MPUC") and the Commissioner of the Minnesota Department of Commerce ("MDOC") (collectively "Defendants") [Doc. Nos. 67, 70] to Magistrate Judge Steven E. Rau's December 21, 2012 Order denying Movants' Motion for Permissive Intervention. (Magistrate Judge Order dated December 21, 2012 [Doc. No. 63].) After reviewing the Magistrate Judge's Order for clear error, 28 U.S.C. § 636(b)(1)(A); accord D. Minn. L.R. 72.2(a), the Court affirms the Order for the reasons set forth below.

I.  BACKGROUND

 A.  Minnesota's Next Generation Energy Act

The Minnesota legislature passed the Next Generation Energy Act ("NGEA") in 2007, establishing energy and environmental standards related to carbon dioxide emissions. 2007 Minn. Laws Ch. 136, art. 5, § 3. Minn. Stat. § 216H.03, subd. 3 seeks to limit increases in "statewide power sector carbon dioxide emissions." The statute provides that "[u]nless preempted by federal law" or "until a comprehensive and enforceable state law or rule pertaining to greenhouse gases that directly limits and substantially reduces, over time, statewide power sector carbon dioxide emissions is enacted and in effect," no person shall:

2

> (1) construct within the state a new large energy facility that would contribute to statewide power sector carbon dioxide emissions;
>
> (2) import or commit to import from outside the state power from a new large energy facility that would contribute to statewide power sector carbon dioxide emissions; or
>
> (3) enter into a new long-term power purchase agreement that would increase statewide power sector carbon dioxide emissions. For purposes of this section, a long-term power purchase agreement means an agreement to purchase 50 megawatts of capacity or more for a term exceeding five years.

Id. "Statewide power sector carbon dioxide emissions" are defined in the statute as "the total annual emissions of carbon dioxide from the generation of electricity within the state and all emissions of carbon dioxide from the generation of electricity imported from outside the state and consumed in Minnesota." Id. subd. 2. A "new large energy facility" is defined as "any electric power generating plant or combination of plants at a single site with a combined capacity of 50,000 kilowatts or more and transmission lines directly associated with the plant that are necessary to interconnect the plant to the transmission system." Minn. Stat. § 216B. 2421, subd. 2(1).[1]

---

[1] Minn. Stat. § 216H.03, subd. 1 specifically provides that the following are not considered a "new large energy facility" under the law:

> a facility that (1) uses natural gas as a primary fuel, (2) is designed to provide peaking, intermediate, emergency backup, or contingency services, (3) uses a simple cycle or combined cycle turbine technology, and (4) is capable of achieving full load operations within 45 minutes of startup for a simple cycle facility, or is capable of achieving minimum load operations within 185 minutes of startup for a combined cycle facility.

Minn. Stat. § 216H.03, subd. 1.

Certain persons are exempt from the prohibitions contained in Minn. Stat. § 216H.03, subd. 3. Minn. Stat. § 216H.03, subd. 4 provides that "[t]he prohibitions in subdivision 3 do not apply if the project proponent demonstrates to the Public Utilities Commission's satisfaction that it will offset the new contribution to statewide power sector carbon dioxide emissions with a carbon dioxide reduction project." The carbon dioxide reduction project must:

> offset in an amount equal to or greater than the proposed new contribution to statewide power sector carbon dioxide emissions in either, or a combination of both, of the following ways:
>
>> (1) by reducing an existing facility's contribution to statewide power sector carbon dioxide emissions; or
>>
>> (2) by purchasing carbon dioxide allowances from a state or group of states that has a carbon dioxide cap and trade system in place that produces verifiable emissions reductions.

Minn. Stat. 216H.03, subd. 4(b). The MPUC must ensure that proposed carbon dioxide reduction projects are "permanent, quantifiable, verifiable, enforceable, and would not have otherwise occurred." Id. subd. 4(c).

The NGEA may be enforced by either the MPUC or the MDOC if either entity "determines that any person is violating or about to violate this section." Id., subd. 8. The MPUC or MDOC may "refer the matter to the attorney general who shall take appropriate legal action." Id. The NGEA may also "be enforced by the attorney general." Id.

B.  **Procedural Background**

On November 2, 2011, Plaintiffs filed a Complaint against Minnesota's Attorney General Lori Swanson, five Commissioners of the MPUC, and one Commissioner of the MDOC, each in their official capacities. (Compl. [Doc. No. 1].)[2] Plaintiffs filed an Amended Complaint on December 1, 2011. (Am. Compl. [Doc. No. 9].) In Count I, Plaintiffs assert that Minn. Stat. § 216H.03, subd. 3(2)–(3) violates the Commerce Clause of the United States Constitution. (Id. ¶¶ 85–98.) In Counts II and III, Plaintiffs claim that Minn. Stat. § 216H.03, subd. 3(2)–(3) violates the Supremacy Clause of the United States Constitution because the statute is preempted by the Clean Air Act, 42 U.S.C. §§ 7410 et seq. ("CAA") and the Federal Power Act, 16 U.S.C. §§ 791a et seq. ("FPA"). (Id. ¶¶ 99–118.) In Count IV, Plaintiffs allege that Minn. Stat. § 216H.03, subdivision 3(2)–(3) violates the Privileges and Immunities Clause of the United States Constitution. (Id. ¶¶ 119-127.) In Count V, Plaintiffs seek a declaratory judgment that the FPA preempts Minn. Stat. § 216H.03, subd. 3(2)–(3). (Id. ¶¶ 128–133.) In Count VI, Plaintiffs allege that Minn. Stat. § 216H.03, subd. 3(2)–(3) violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (Id. ¶¶ 134-143.)

---

[2]  Plaintiffs are the State of North Dakota; the Industrial Commission of North Dakota; the Lignite Energy Council, a North Dakota trade association; Basin Electric Power Cooperative, a non-profit whose core business is generating and transmitting wholesale electric bulk power to customers; the North American Coal Corporation, the largest lignite coal producer in the United States; Great Northern Properties Limited Partnership, an owner of land in North Dakota containing surface mineral lignite; Missouri Basin Municipal Power Agency d/b/a Missouri River Energy Services, an electric utility; and Minnkota Power Cooperative, Inc., a nonprofit Minnesota cooperative wholesale power provider to member owned distributors and cooperatives. (Compl. ¶¶ 12–22 [Doc. No. 1].)

Plaintiffs further request a declaratory judgment adjudicating that Minn. Stat. § 216H.03, subd. 3(2)–(3) is unconstitutional and injunctive relief enjoining its enforcement. (Id. at pp. 39–40.) Plaintiffs also request an award of costs and expenses incurred in the litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b). (Id.)

On December 7, 2011, Defendants filed an Answer to the Amended Complaint and a Motion for Judgment on the Pleadings on Counts II through VI of Plaintiffs' Amended Complaint.[3] (Answer to Am. Compl. [Doc. No. 10]); (Defs.' Mot. for Partial J. on the Pleadings [Doc. No. 11].) Defendants also moved to dismiss the Attorney General as a party to this action. (Defs.' Mot. for Partial J. on the Pleadings [Doc. No. 11].) Following supplemental briefing, the Court denied Defendants' Motion as to Counts II, III, and V; granted it as to Counts IV and VI; and granted dismissal of Minnesota's Attorney General. (Mem. Op. and Order dated September 30, 2012 [Doc. No. 32].)

On November 26, 2012, Movants jointly moved for permissive intervention into this action. (Mot. for Permissive Intervention [Doc. No. 33].) Defendants filed a brief in support of the Motion and Plaintiff opposed it. (Defs.' Mem. in Response to Movants' Mot. to Intervene [Doc. No. 43]); (Pls.' Mem. in Opp'n to Mot. for Movants' Mot. to Intervene [Doc. No. 44].) The Magistrate Judge denied Movants' Motion for Permissive Intervention on December 21, 2012. (Order dated December 21, 2012 [Doc. No. 63].) The Magistrate Judge found that standing is required for permissive intervention under

---

[3] Defendants answered the original Complaint on November 23, 2011. (Answer [Doc No. 8].)

6

Eighth Circuit law and that Movants had failed to establish standing. (Order Dated December 21, 2012 at 7–9 [Doc. No. 63].) The Magistrate Judge alternatively found that even if Movants had standing, intervention was not justified after considering the factors for permissive intervention. (Id. at 10–16.) While the Magistrate Judge found that Movants' Motion was timely and that Movants' claims shared questions of law and fact in common with the main action, the Magistrate Judge concluded that allowing Movants to intervene would cause undue delay and prejudice. (Id. at 11–15.) The Magistrate Judge also noted that Movants' interests would be adequately represented by Defendants. (Id. at 15–16.) Finally, the Magistrate Judge invited Movants to request participation in the action as amici curiae to offer "a perspective or arguments different from those of the parties that may indeed be helpful to the fair and just resolution of the issues presented in this case." (Id. at 16.)

On January 11, 2013, Movants and Defendants filed Objections to the Magistrate Judge's December 21, 2012 Order. (Movants' Objection [Doc. No. 67]); (Defs.' Objections [Doc. No. 70].) Plaintiffs responded to the Objections of Movants and Defendants on January 25, 2013. (Pls.'s Resp. to Objection [Doc. No. 72].)

## II. ANALYSIS

### A. Standard of Review

Motions for permissive intervention are non-dispositive motions. D. Minn. LR 7.1(a). The standard of review for an appeal of a magistrate judge's order on a non-dispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The Court must affirm the order unless it is clearly

7

erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); accord D. Minn. LR 72.2(a). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). If the magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though had it been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, 470 U.S. 564, 573–74 (1985).

### B. Objections

Movants and Defendants argue that the Magistrate Judge clearly erred in denying Movants' Motion for Permissive Intervention. (Movants' Objection [Doc. No. 67]); (Defs.' Objection [Doc. No. 70].) Federal Rule of Civil Procedure 24(b) provides in relevant part that:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact . . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

When deciding whether to grant permissive intervention, the Court considers three factors: (1) whether the motion to intervene is timely; (2) whether the movant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. In re Baycol Prods. Litig., 214 F.R.D. 542, 543–44 (D. Minn. 2003). The Eighth Circuit has noted that "[a]lthough the adequacy of protection is only a minor variable in the Rule

24(b) decision calculus, it is not an illegitimate consideration." S.D. ex rel. Barnett v. United States Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003) (citations omitted).

The Court has discretion to grant or deny a motion for permissive intervention, and its decision is reviewed under an abuse of discretion standard. Id. The Eighth Circuit has stated that "[r]eversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent." Id. (citations omitted). Reversal of a decision to deny permissive intervention is reserved for situations when the court clearly abused its discretion and failed to "articulate[] a legitimate reason for denying the Rule 24(b) motion." Id. at 787–88.

Here, the Magistrate Judge found that Movant's Motion for Permissive Intervention was timely and shared questions of law or fact in common with the underlying action. (Order Dated December 21, 2012 at 11–12 [Doc. No. 63].) Plaintiffs do not dispute this finding. See D. Minn. LR 72.2(a) ("[A] party may not . . . assign as error a defect in the Magistrate Judge's order to which objection was not timely made."). Therefore, the only issue in resolving the Objections of Movants and Defendants is whether the Magistrate Judge erred in finding that Movants' Motion for Permissive Intervention would cause undue delay or prejudice and that their interests would be adequately represented by Defendants. (Movants' Objection at 8–13 [Doc. No. 67]); (Defs.' Objection at 2–5 [Doc. No. 70].)

The Magistrate Judge correctly noted that "[t]he principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." (Order dated December 21, 2012 at 12

[Doc. No. 63]) (quoting S.D. ex rel. Barnett, 317 F.3d at 787 (citations omitted).) The Magistrate Judge then found that the "Movants' stated objective—to uphold the constitutionality of the [NGEA]—is indistinguishable from that of Defendants." (Id. at 13) (citations omitted.) The Magistrate Judge concluded that:

> Given the parallel goals and defenses of Defendants and Movants, combined with Defendants' demonstrated willingness and capacity to present those defenses, the resolution of this case will not be enhanced in any significant way through the permissive intervention of Movants. Rather, adding seven additional parties to duplicate arguments would only be a source of repetition and delay.

(Id. at 14–15) (citations omitted.) This conclusion was supported by the presumption under Eighth Circuit law that Movants' interests would be adequately represented by Defendants, and Movants failed to present the "strong showing" necessary to rebut this presumption. (Id. at 15–16) (citing Curry v. Regents of Univ. of Minn., 167 F.3d 420, 423 (8th Cir. 1999) ("[W]hen a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public . . . . This presumption may be rebutted by a strong showing of inadequate representation.")).

Movants and Defendants argue that the Magistrate Judge improperly made as the "cornerstone" of his ruling that Defendants would adequately represent Movants' interests. (Movants' Objection at 8 [Doc. No. 67]); (Defs.' Objection at 3 [Doc. No. 70].) According to Movants, "[a]n approach that elevates a showing of inadequacy of representation into a rigid requirement for permissive intervention is inconsistent with Rule 24." (Movants' Objection at 8 [Doc. No. 67]); accord (Defs.' Objection at 3 [Doc.

10

No. 70]) ("As to the issue of adequacy of representation, [the Magistrate Judge] improperly injected that issue into his consideration of the [Movants'] motion for permissive intervention.").

Movants and Defendant also contend that the Magistrate Judge's conclusions about adequacy of representation contained three errors: (1) Movants' defenses to Plaintiffs' Amended Complaint are not identical to Defendants' defenses; (2) the Magistrate Judge "overlooked that [Movants] also represent members in other states . . . who, by definition, cannot be represented by the State of Minnesota;" and (3) the Magistrate Judge "discounted [Defendants'] position supporting the [Movants'] intervention." (Movants' Objection at 9–10 [Doc. No. 67]); accord (Defs.' Objection at 3–4 [Doc. No. 70].)

Plaintiffs respond that "[t]he adequacy of protection afforded to the prospective intervenors by the existing parties is a legitimate consideration for permissive intervention." (Pls.' Resp. to Objections at 10 [Doc. No. 72]) (citing S.D. ex rel Barnett, 317 F.3d at 787.) Plaintiffs allege that "given the Defendants are the parties whom the Minnesota Legislature specifically tasked with enforcing the NGEA, it is reasonable to expect the Defendants will adequately represent the interests of the public." (Id. at 10.) Moreover, even though Movants assert that their interests "may not be the same" as Defendants, Plaintiffs state that Movants' "argument fails because they have not identified a specific conflict between the Defendants' interest in the statute being upheld and the [Movants'] interest in the statute being upheld." (Id. at 11.)

Nevertheless, according to Plaintiffs, the Magistrate Judge "did not disregard counsels' representations that they would work together with Defendants to minimize burden and delay[,]" but rather "considered those representations and reasonably disagreed." (Id. at 10.) Plaintiffs note that "[s]even additional parties and their respective attorneys will undoubtedly mean more discovery (both in terms of number of requests and the volume of information exchanged), more discovery disputes, more meet-and-confer obligations, and more motions." (Id.) Finally, Plaintiffs argue that "people who are not residents of Minnesota generally could not be deemed within the 'zone of interests' protected by a Minnesota statute and should therefore not have standing to enforce or defend the statute." (Id. at 13) (citing City of Clarkson Valley v. Mineta, 495 F.3d 567 (8th Cir. 2007).)

The Court agrees with Plaintiffs that the Magistrate Judge did not clearly err in denying Movants' Motion for Permissive Intervention. The Magistrate Judge carefully considered the submissions of Movants and Defendants submissions and properly applied Eighth Circuit law to hold that adjudication of Plaintiffs' constitutional challenges to the NGEA would not be advanced by Movants' intervention and participation as parties. In particular, the Magistrate Judge found intervention would unduly delay and prejudice the rights of the original parties. Among other things the Magistrate Judge found that "Movants' presence would not further any interests of justice and would simply serve to delay and overcomplicate this matter" and "intervention would change the complexion of this case—transforming it from a constitutional question to an environmental policy issue." (Order Dated December 21, 2012 at 10 [Doc. No. 63].)

The Magistrate Judge also did not err in analyzing whether the adequacy of the existing parties' representation negated the need for Movants to intervene in the action. In S.D. ex rel. Barnett, the Eighth Circuit stated that the "principal consideration" in ruling on a Rule 24(b) motion is whether the proposed intervention would delay or prejudice the parties' rights. 317 F.3d at 787. But in that case, "the district court did not determine whether the proposed intervention would cause undue delay or prejudice." Id. In fact, the district court in S.D. ex rel. Barnett only "examined whether the United States could adequately protect the [movants] interest." Id. When analyzing the district court's decision for abuse of discretion, the Eighth Circuit stated that "[a]lthough the adequacy of protection is only a minor variable in the Rule 24(b) decision calculus, it is not an illegitimate consideration." Id. As such, the court concluded in S.D. ex rel. Barnett that "the district court [did not] clearly abuse[] its discretion . . . by not granting the motion" even though it did not expressly analyze whether the intervention would cause delay or prejudice. Id.

Here, the Magistrate Judge not only considered the adequacy of representation to Movants if they were not allowed to intervene in the case, but also properly considered the well-recognized factors for permissive intervention and concluded, in his discretion, that intervention was not appropriate. The Magistrate Judge expressly found that allowing Movants to intervene in the action would cause undue delay and prejudice to the parties. Accordingly, the Court finds that the Magistrate Judge's decision to deny

13

Movants' Motion for Permissive Intervention was not clearly erroneous or contrary to law.[4]

Even though Movants' Motion for Permissive Intervene is denied, the Court will allow Movants to file amicus briefs in this action. The decision to allow the filing of an amicus brief is based on "whether the brief[s] will assist the Court by presenting arguments, theories, and or facts that are not contained in the parties' briefs." Am. Civil Liberties Union of Minn. v. Tarek ibn Zayad Acad., No. 09-cv-138 (DWF/JJG), 2010 WL 1840301, at * 9 (D. Minn. May 7, 2010). Movants will likely have a unique perspective on this case and perhaps helpful information given their level of expertise that the parties may not provide. Accordingly, the Court encourages Movants to file amicus briefs on motions in this action where they determine that additional information would be helpful to the Court in making its findings.

---

[4] The Magistrate Judge also determined that "Movants have not identified the invasion of an interest sufficient to satisfy this Court that they possess adequate [Article III] standing." (Order dated December 21, 2012 at 9 [Doc. No. 63].) Movants object to the Magistrate Judge's finding that they are required to show standing to permissively intervene in the action and, assuming that they are required to demonstrate standing, that they have failed to do so. (Movants' Objection at 2–8 [Doc. No. 67].) "To date, the Eighth Circuit has not yet ruled on whether standing is a prerequisite for permissive intervention." In re Baycol Prods. Litig., 214 F.R.D. at 544 (citing Org. for Competitive Mkts., Inc. v. Seaboard Farms, Inc., No. 00-3432, 2001 WL 842029, at *2 n.2 (8th Cir. Feb. 1, 2001) (per curiam) (declining to address whether a third party seeking permissive intervention must have standing)); but see Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 570 (8th Cir. 1998) ("Article III standing is a prerequisite for intervention in a federal lawsuit.") (citation omitted). The Court need not decide whether Movants must have standing or whether Movants have demonstrated standing because the Court finds that the Magistrate Judge did not clearly err in determining that Movants did not satisfy the requirements of Rule 24(b) for permissive intervention.

## III. ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Movants' Objections [Doc. No. 67] to the Magistrate Judge's December 21, 2012 Order [Doc. No. 63] are **OVERRULED**;

2. Defendants' Objections [Doc. No. 70] to the Magistrate Judge's December 12, 2012 Order [Doc. No. 63] are **OVERRULED**;

3. The Magistrate Judge's December 12, 2012 Order [Doc. No. 63] is **AFFIRMED**; and

4. Movants' Motion to Permissively Intervene in the action [Doc. No. 33] is **DENIED**.

Dated: February 15, 2013
s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge