# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of North Dakota, et al., | Case No. 11-cv-3232 (SRN/SER) |
| Plaintiffs, | |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER**[1] |
| Beverly Heydinger, Commissioner and Chair of Minnesota Public Utilities Commission, et al., | |
| Defendants. | |

John A. Knapp, Thomas H. Boyd, and Brent A. Lorentz, Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629; Casey Jacobson and Claire M. Olson, Basin Electric Power Cooperative, Office of General Counsel, 1717 East Interstate Avenue, Bismarck, ND 58503-0564; John Neumann, The North American Coal Corporation, 5340 Legacy Drive, Building 1, Suite 300, Plano, TX 75024; Paul Forster and Brian Bjella, Crowley Fleck PLLP, 400 East Broadway, Suite 600, Bismarck, ND 58502; Gerad Paul, Minnkota Power Cooperative, Inc., PO Box 13200, Grand Forks, ND 58208; Wayne K. Stenehjem, Office of the Attorney General, State of North Dakota, 600 East Boulevard, 1st Floor, Bismarck, ND 58505-0040; William Taylor, Woods Fuller Schultz & Smith, 300 South Phillips Avenue Suite 300, P.O. Box 5027, Sioux Falls, SD 57117-5027; and Wyatt Hogan, Great Northern Properties L.P., 601 Jefferson Street, Suite 3600, Houston, TX 77002, for Plaintiffs.

Alethea M. Huyser, Lisa A. Crum, John S. Garry, and Michael T. Everson, Office of the Attorney General, State of Minnesota, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128, for Defendants.

---

[1] This ruling is amended to add footnote 7, which was inadvertently omitted from the previously-filed order.

SUSAN RICHARD NELSON, United States District Court Judge

# I.      INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees and

Nontaxable Costs [Doc. No. 212] incurred in this litigation before the district court ("the

Court") and Appellees' motion for attorneys' fees and costs incurred before the Eighth

Circuit Court of Appeals.[2]  For the reasons set forth below, the Court finds that Plaintiffs

are entitled to a total of $1,310,088 in attorneys' fees and nontaxable costs.  In addition,

documents filed under seal in support of Plaintiffs' motions may remain under seal.

# II.     BACKGROUND

The Court has summarized the background of this litigation in prior Orders.  See,

e.g., North Dakota v. Heydinger ("Heydinger II"), No. 11-cv-3232 (SRN/SER), 2014 WL

7157013, at *1-2 (D. Minn. Dec. 15, 2014).  Briefly stated, Plaintiffs asserted several

claims under 42 U.S.C. § 1983, alleging that certain provisions of Minnesota's Next

Generation Energy Act ("NGEA") (Minn. Stat. § 216H.03, subd. 3(2)-(3)) violate the

Commerce Clause (Count I), the Supremacy Clause (Counts II and III), the Privileges

and Immunities Clause (Count IV), and the Due Process Clause of the Fourteenth

Amendment (Count VI).  (See Am. Compl. ¶¶ 23, 85-127, 134-43 [Doc. No. 9].)

---

[2]      The Eighth Circuit referred Appellees' motion for attorneys' fees and costs to this
Court pursuant to Eighth Circuit Rule 47C(b), along with a motion to seal related
documents.  (North Dakota v. Heydinger, Nos. 14-2156 & 14-2251 (8th Cir. July 27,
2016) [Doc. No. 276].)

For ease of reference, the Court will refer to the parties as Plaintiffs and
Defendants throughout this opinion, even when addressing work performed before the
Eighth Circuit.

Plaintiffs also sought a declaratory judgment that the Federal Power Act preempts Minn. Stat. § 216H.03, subd. 3 (Count V).  (See id. ¶¶ 128-33.)  Plaintiffs requested an order declaring Minn. Stat. § 216H.03, subd. 3(2)-(3), unconstitutional and unenforceable; an order enjoining enforcement of Minn. Stat. § 216H.03, subd. 3; and an award of costs and expenses incurred in the litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).  (See id. at 39-40.)

Defendants filed a Motion for Partial Judgment on the Pleadings on Counts II through VI of Plaintiffs' Amended Complaint, which the Court granted in part, as to Counts IV and VI.  (Order of 9/30/12 at 40 [Doc. No. 32].)  The parties subsequently brought cross-motions for summary judgment on all of the remaining claims.  On April 18, 2014, the Court granted summary judgment in favor of Plaintiffs on Count I, finding that Minn. Stat. § 216H.03, subd. 3(2)-(3), violates the dormant Commerce Clause (the "Summary Judgment Order").  North Dakota v. Heydinger ("Heydinger I"), 15 F. Supp. 3d 891, 908 (D. Minn. 2014).  As a result, the Court enjoined Defendants and their successors in office from enforcing Minn. Stat. § 216H.03, subd. 3(2)-(3). Id. at 919.  In light of the Court's holding as to Count I, it declined to consider the parties' federal preemption arguments and denied as moot the parties' motions as they related to Counts II, III, and V. Id. at 908.

On May 2, 2014, Plaintiffs filed their Motion for Attorneys' Fees and Nontaxable Costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, seeking an award of attorneys' fees and costs under 42 U.S.C. § 1988.  Section 1988 provides that, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983,] the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable

attorney's fee as part of the costs."  Plaintiffs requested a briefing schedule bifurcating

the issues of (1) whether Plaintiffs may recover their attorneys' fees and nontaxable costs

under § 1988, and (2) whether the amounts requested are reasonable and appropriate.

(Letter of 5/2/14 at 2 [Doc. No. 213].)  The Court agreed that bifurcation was proper,

received full briefing, and heard oral argument on the first issue.  Based on this Court's

ruling in favor of Plaintiffs on summary judgment, which awarded them the relief they

sought in bringing the lawsuit, the Court concluded that Plaintiffs are prevailing parties

under § 1988.  Heydinger II, 2014 WL 7157013, at *3.  And, because Defendants

presented no special circumstances that would render an award unjust, the Court

determined that Plaintiffs are entitled to their reasonable attorneys' fees.  Id. at *5.  The

parties' briefing on the reasonableness of the amount of district court-related fees

requested is now before the Court.[3]

---

[3]    After Plaintiffs had filed their opening brief on this issue, Defendants filed a letter seeking a stay pending the Eighth Circuit's decision on Defendants' appeal.  (See Order of 4/6/16 at 2 [Doc. No. 264].)  Defendants argued that the Court lacks jurisdiction to consider Plaintiffs' fee request.  (Id.)  The Court disagreed.  (Id. at 2-3.)  Defendants raised this issue for a second time in their opposition papers on the present matter, arguing that Plaintiffs' appeal of this Court's initial denial of fees in its Summary Judgment Order divested this Court of jurisdiction over the fee request.  (See Defs.' Opp'n at 16-18 [Doc. No. 266].)  Because the Eighth Circuit has now issued its ruling, Defendants' argument is moot.

Similarly, Defendants argue that Plaintiffs are improperly seeking to recover fees for hours spent litigating the attorneys' fees issue before both this Court and the Eighth Circuit, and that the Court cannot award fees for hours spent on a matter over which the Court lacked jurisdiction.  (Id. at 37.)  However, Defendants do not identify which entries in the billing records constitute the alleged double-dipping, and Plaintiffs have expressly stated that they have redacted from the submitted invoices—and are not seeking—fees

In May 2014, Defendants appealed the summary judgment ruling to the Eighth Circuit.  (Notice of Appeal [Doc. No. 219].)  The Eighth Circuit affirmed this Court's ruling on June 15, 2016.  North Dakota v. Heydinger ("Heydinger III"), 825 F.3d 912 (8th Cir. 2016).  The author of the Eighth Circuit opinion, Judge Loken, ruled in Plaintiffs' favor based on Plaintiffs' Dormant Commerce Clause challenge, as this Court did.  Id. at 919-22.  Judges Murphy and Colloton both found that Minn. Stat. § 216H.03, subd. 3(2)-(3), is preempted by federal statutes.  Id. at 923-29.   While Judge Murphy affirmed the Court's ruling based on preemption, she disagreed with Judge Loken's extraterritoriality analysis under the Dormant Commerce Clause.  Id. at 924-27. However, Judge Colloton declined to address the Dormant Commerce Clause claim altogether, explaining that a preemption claim is considered statutory for purposes of the Supreme Court's practice "of deciding statutory claims first to avoid unnecessary constitutional adjudications" under the doctrine of constitutional avoidance.  Id. at 927 (citations omitted).  If federal law preempts the challenged statute, Judge Colloton observed that it would be unnecessary to address the Dormant Commerce Clause challenge.  Id.  Finding that federal law preempted the statute, Judge Colloton concurred in the affirmance of the district court's ruling that granted partial summary judgment to Plaintiffs.  Id.

---

relating to the appellate proceedings in their attorneys' fee petition before the district court.  (Pls.' Second Reply at 22 [Doc. No. 269]; Supp'l Boyd Aff. [Doc. No. 271], Ex. 23 (Letter), at 2.)  In addition, as discussed above, the matter of this Court's jurisdiction is no longer at issue.

While Plaintiffs' attorneys' fees motion was pending before this Court, Plaintiffs also moved for attorneys' fees and costs before the Eighth Circuit in connection with Plaintiffs' appellate work.  As noted, the Eighth Circuit referred Plaintiffs' appellate motion for attorneys' fees and costs to this Court, along with a motion to seal related documents.  (Heydinger, (8th Cir. July 27, 2016) [Doc. No. 276 at 2].)  In doing so, Judge Loken indicated that he would deny the fee petition were he to rule on it.  Id.  The Eighth Circuit also directed this Court to address, *inter alia*, the following:  (1) whether the State of North Dakota ("North Dakota") and its Industrial Commission are "persons" eligible for an award of attorneys' fees under 42 U.S.C. §§ 1983, 1988; (2) whether the presence of additional plaintiffs justifies a fee award even if the State and its agency are ineligible;[4] and (3) whether any "special circumstances" would render a fee award unjust.  Id. (citing Hatfield v. Hayes, 877 F.2d 717, 719 (8th Cir. 1989)).  Pursuant to this Court's Order of July 29, 2016, the parties submitted supplemental briefing on the topics identified above, as well as the question of "whether Plaintiffs are entitled to fees as 'prevailing parties' under § 1988 where the appellate panel was split as to the basis of its affirmance of the district court."  (Order of 7/29/16 at 2 [Doc. No. 277].)

---

[4]     In addition to the governmental Plaintiffs North Dakota and the Industrial Commission, the private Plaintiffs include Lignite Energy Council, Basin Electric Power Cooperative ("Basin Electric"), The North American Coal Corporation ("North American Coal"), Great Northern Properties Limited Partnership ("Great Norther Properties"), Missouri Basin Municipal Power Agency d/b/a Missouri River Energy Services ("MRES"), and Minnkota Power Cooperative, Inc. ("Minnkota").

### III.    DISCUSSION

#### A.    Eligibility for Attorneys' Fees

A party seeking attorneys' fees and costs must timely make such a claim under Rule 54(d) and identify the statute or rule entitling the movant to the award and a fair estimate of the amount sought.  Fed. R. Civ. P. 54(d)(2)(A)-(B).  Plaintiffs timely filed such a motion here, asserting that they are entitled to their attorneys' fees and nontaxable costs and expenses pursuant to 42 U.S.C. § 1988, (Pls.' Mot. for Attorneys' Fees and Nontaxable Costs at 3 [Doc. No. 212]), and before the Eighth Circuit.  (Appellees' Mot. for Attorneys' Fees Pursuant to 8th Cir. R. 47C ("Pls.' App. Br.") at 2.)[5]

Under § 1988, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983,] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "[T]he courts have wide discretion in determining whether or not an award of attorney's fees is warranted, giving due consideration to the principle that the prevailing party should recover attorney's fees 'unless special circumstances would render such an award unjust.'"  Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action, 558 F.2d 861, 870 (8th Cir. 1977) (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).  Section 1983 expressly provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

---

[5]    While the Court includes the ECF docket numbers of the parties' district court filings for ease of reference, because the Court did not require the parties to re-file their appellate briefing in the district court matter, citations to the parties' appellate briefing do not include an ECF docket number.

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

In their supplemental briefing to this Court, Plaintiffs argue that North Dakota and the Industrial Commission are "persons" under § 1983 because they sought redress for the deprivation of constitutional rights on behalf of North Dakota citizens and others and not to assert North Dakota's sovereign status or prerogatives. (Pls.' Supp'l Mem. at 4 [Doc. No. 280].) Moreover, Plaintiffs contend that even if North Dakota and the Industrial Commission were not "persons" under § 1983, that would not prohibit the private Plaintiffs from recovering their attorneys' fees as prevailing parties under § 1988(b). (Id. at 8.) In addition, Plaintiffs contend that they are "prevailing parties" under § 1988 based on the appellate panel's basis for affirmance of this Court's grant of summary judgment. (Id. at 1-2.) They first note that Judge Loken affirmed the district court's ruling under the Dormant Commerce Clause, the basis on which the district court had ruled. (Id.) Plaintiffs also assert that Judge Colloton, who joined in affirming the ruling, albeit on a different basis, did not reject the Dormant Commerce Clause basis. (Id. at 2.) Rather, Plaintiffs note that he applied the theory of constitutional avoidance to avoid deciding a constitutional issue when another non-constitutional basis is capable of resolving the issue. (Id.) Accordingly, Plaintiffs contend that they are entitled to recover their attorneys' fees under § 1988, consistent with authority applying the "avoidance exception" to permit fee recovery in cases in which a fee-generating claim was

8

substantial and "arose out of a common nucleus of operative fact" with a non-fee generating, successful claim.  (Id. at 2-3) (citing D.C., Inc. v. Missouri, 627 F.3d 698, 700 (8th Cir. 2010); Rogers Grp., Inc. v. City of Fayetteville, Ark., 683 F.3d 903, 910-12 (8th Cir. 2012)).  Plaintiffs assert that no special circumstances bar the recovery of attorneys' fees or render such an award unjust.  (Id. at 9-10.)  Finally, Plaintiffs contend that the documentation submitted in support of their requests for fees and costs demonstrates that the requested amounts are reasonable.  (Id. at 10; Pls.' App. Br. at 17-20.)

Defendants present several arguments against an award of attorneys' fees. They argue that as governmental entities, North Dakota and the Industrial Commission are not "persons" entitled to relief under § 1983, and therefore, cannot recover attorneys' fees or costs under § 1988(b).  (Defs.' Supp'l Opp'n at 2-7 [Doc. No. 283].)  In addition, Defendants contend that North Dakota is legally prohibited from representing private interests; therefore, they contend that the costs and fees paid by North Dakota are not recoverable by the private Plaintiffs.  (Id. at 7-9.)  Defendants also contend that the presence of private Plaintiffs does not salvage any right to attorneys' fees.  (Id. at 8-9.) Defendants further argue that Plaintiffs are not prevailing parties because only one member of the Eighth Circuit panel that affirmed the district court did so on the basis of the fee-generating § 1983 claim.  (Id. at 9-10.)  Defendants also contend that special circumstances make a fee award inappropriate and that many of the requested fees are not recoverable or are disproportionate and excessive.  (Id. at 10.)  The Court considers each of these issues in turn.

### 1. "Persons"

Relying on the Supreme Court's holding in <u>Will v. Mich. Dep't of State Police</u> that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," 491 U.S. 58, 71 (1989), Defendants argue that North Dakota and the Industrial Commission are not eligible for attorneys' fees, as North Dakota is a sovereign state and the Industrial Commission is a state agency.[6]  (Defs.' Supp'l Opp'n at 2-3 [Doc. No. 283].)

As Plaintiffs note, the Supreme Court has recognized distinctions between a state's sovereign, non-sovereign, and quasi-sovereign interests and actions in various contexts. <u>See</u> <u>Albert L. Snapp & Son, Inc. v. Puerto Rico</u>, 458 U.S. 592, 600-02 (1982).  A sovereign interest may consist of "the exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal; [and] the demand for recognition from other sovereigns—most frequently this involves the maintenance and recognition of borders." <u>Id.</u> at 601.

An example of a non-sovereign interest includes a state's proprietary interest in land or a business venture.  <u>Id.</u>  "[L]ike other such proprietors[,] [a state] may at times need to pursue those interests in court."  <u>Id.</u> at 601-02.  As another example of a non-sovereign interest, "a State may, for a variety of reasons, attempt to pursue the interests of

---

[6]      Curiously, Defendants did not raise this argument in opposition to summary judgment.  They asserted it only after the entry of judgment on Plaintiffs' § 1983 claim based on the Dormant Commerce Clause and the Eighth Circuit's affirmance of summary judgment on behalf of Plaintiffs.

a private party, and pursue those interests only for the sake of the real party in interest."
Id. at 602.

A quasi-sovereign interest "consist[s] of a set of interests that the State has in the well-being of its populace," that is "sufficiently concrete to create an actual controversy between the State and the defendant."  Id.  For example, actions brought by states to represent the interests of their citizens in enjoining public nuisances are brought in a quasi-sovereign capacity.  Id.  (citations omitted).  More specifically, "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general" and "a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system."  Id. at 607.

Applying these precepts to the facts of this case, North Dakota and the Industrial Commission did not assert in their § 1983 claims that Defendants were interfering with Plaintiffs' sovereignty.  Rather, as Plaintiffs note, in this suit, North Dakota sought declaratory and injunctive relief to remedy the deprivation of constitutional rights caused by Minn. Stat. § 216H.03, subd. 3(2)-(3), which, they claimed, reduced the value and benefits of lignite resources located in North Dakota.  (Pls.' Supp'l Mem. at 6 [Doc. No. 280]) (citing Am. Compl. ¶¶ 30-32.)  The Industrial Commission sought the same relief based on the deprivation of constitutional rights that interfered with the development of clean coal technology and other research, development, and marketing of lignite and lignite products.  (Id.) (citing Am. Compl. ¶¶ 36-38; 38-40).  Plaintiffs thus claimed that under provisions of Minnesota's energy statute, Defendants deprived North Dakota citizens and other persons of their constitutional rights.  (Id.)  In doing so, North Dakota

and the Industrial Commission thus acted in quasi-sovereign and non-sovereign capacities.

The plain language of § 1983 does not exclude a state from seeking relief for constitutional violations on behalf of its citizens or others.  42 U.S.C. § 1983.  In fact, as Plaintiffs note, states and governmental entities have utilized § 1983 to bring such lawsuits.  (Pls.' Supp'l Mem. at 6 [Doc. No. 280]) (citing Rural Water Dist. No. 1 v. City of Wilson, Kan., 243 F.3d 1263, 1274 (10th Cir. 2001); Pennsylvania v. Porter, 659 F.2d 306, 313-19 (3d Cir. 1981); Prot. & Advocacy for Persons with Disabilities v. Armstrong, 266 F. Supp. 2d 303, 312 (D. Conn. 2003)).

In ruling that a state is not a "person" amenable to suit in its sovereign capacity under § 1983, Will, 491 U.S. at 71, and that a sovereign entity may not assert claims under § 1983 based on its sovereign status, Inyo Cnty. v. Paiute-Shoshone Indians, 538 U.S. 701 (2003), the Supreme Court did not issue any sort of blanket prohibition against states asserting § 1983 claims on behalf of their citizens for the deprivation of constitutional rights.  Instead, the Court considered the status or capacity in which the state brought the action and focused on the legislative environment in which the word "person" appears.  Id. at 711.  For example, as noted by the Ninth Circuit in Skokomish Indian Tribe v. United States, 410 F.3d 506, 514 (9th Cir. 2005), in Georgia v. Evans, 316 U.S. 159, 160-63 (1942), the state, as a purchaser of asphalt shipped in interstate commerce, was a "person" entitled to seek relief under the Sherman Act; and in Pfizer, Inc. v. Gov't of India, 434 U.S. 308 (1978), a foreign country, as a purchaser of antibiotics, was a "person" entitled to sue under United States antitrust laws.  In contrast,

in Skokomish Indian Tribe, the Ninth Circuit found that the tribe was not suing as an

aggrieved customer, or in any other capacity resembling a private person; rather, it was

attempting to assert communal fishing rights in its status as a sovereign entity.  410 F.3d

at 515.  Accordingly, the court held that the tribe's claims could not be asserted under

§ 1983.  Id. at 516.

Moreover, courts have indicated that although Congress's main purpose in

enacting § 1988 was to permit private litigants to assert civil rights claims, "Congress's

main purpose is effectuated by construing the provision broadly to permit state as well as

local governmental agencies to recover fees when they prevail as plaintiffs."  Abrams v.

11 Cornwell Co., 695 F.2d 34, 44 (2d Cir. 1982) (citing Mid-Hudson Legal Servs., Inc. v.

G & U, Inc., 578 F.2d 34, 37 (2d Cir. 1978)), vacated in part on other grounds, 718 F.2d

22 (2d Cir. 1983).  In Abrams, the Second Circuit stated that attorneys' fees should

similarly be awarded "when the public entity promoting citizens' rights is the State

itself," such as when a state attorney general's office advances claims on behalf of its

citizens.  Id. at 44.  The court explained, "The prospect of recovering attorneys' fees

makes it more likely that a state attorney general's office with limited resources will

bring a potentially unpopular lawsuit on behalf of a group that on its own would be

entitled to fees, but would probably be unable nevertheless to assert its rights."  Id.  The

suit in Abrams was brought in a quasi-sovereign capacity, with the State of New York

suing a group of property owners, asserting civil rights violations for the owners'

acquisition of and failure to sell to New York a residence which it wished to acquire as a

group facility for mentally disabled adults.  Id. at 37-38.

The Supreme Court similarly rejected a challenge to the Ninth Circuit's award of attorney's fees to a school district, in which the state defendant had argued that state-funded entities were not entitled to receive such awards from the state. Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457, 487 n.31 (1982). The Supreme Court found that the district was clearly a party covered by the language of § 1988, noting that "[n]othing in the history of the statutes suggests that [the fee-award language of § 1988] was meant to exclude state-funded entities." Id. Rather, the Court observed that several Courts of Appeals had held to the contrary, finding that "publicly funded legal services organizations may be awarded fees." Id. (citing Dennis v. Chang, 611 F.2d 1302 (9th Cir. 1980); Holley v. Lavine, 605 F.2d 638 (2d Cir. 1979); Lund v. Affleck, 587 F.2d 75 (1st Cir. 1978)). Moreover, the Court observed that when Congress passed § 1988, it cited with approval a decision awarding fees to a state-funded organization. Id. (citing H.R. Rep. No. 94-1558, p. 8, n.16 (1976) (internal citation omitted)).

These cases, along with the authority noted earlier that permit a state to seek relief under § 1983 when it sues in its non-sovereign or quasi-sovereign capacity, support the position that a state or governmental entity may be considered a "person" for purposes of § 1983 and, correspondingly, for attorneys' fees under § 1988(b), assuming that the other requirements for attorneys' fees are satisfied. Like the State of New York in Abrams, 695 F.3d at 44, and the Seattle School District in Washington, 458 U.S. at 487, here, North Dakota sought to remedy the deprivation of rights to its citizens caused by the Minnesota statute which reduced the value and benefits of lignite resources located in North Dakota. (Am. Compl. ¶¶ 30-32.) The Industrial Commission similarly sought to

remedy the deprivation of rights caused by the subject statute which interfered with the development of clean coal technologies and other research, development, and marketing of lignite and lignite products.  (Id. ¶¶ 36-40.)  In doing so, Plaintiffs did not allege that Defendants were interfering with the sovereignty of North Dakota.  Instead, Plaintiffs claimed that Minn. Stat. § 216H.03, subd. 3(2)-(3), deprived North Dakota's citizens and other persons of their constitutional rights.  For all of these reasons, as this Court found in Heydinger II, 2014 WL 7157013, at *2 n.2, the Court finds that Plaintiffs North Dakota and the Industrial Commission are "persons" eligible to seek relief under § 1983 for constitutional harms to their citizens and others, and rejects Defendants' arguments to the contrary.[7]

---

[7]    Defendants also briefly argue that only the private Plaintiffs—not North Dakota or the Industrial Commission—moved for summary judgment and established standing. (Defs.' Supp'l Opp'n at 6 [Doc. No. 283]) (citing  Pls.' Mem. Supp. Mot. for Summ. J. at 11-14 [Doc. No. 137].)  They contend that "had North Dakota or the Industrial Commission pressed their claims, this Court would have lacked jurisdiction" due to the Supreme Court's exclusive jurisdiction over suits between two sovereigns.  (Id.) (citing 28 U.S.C. § 1251).

The Court rejects this argument. Again, Plaintiffs did not sue in their sovereign capacities, nor did Defendants challenge this Court's jurisdiction on this basis.  And while Plaintiffs may have emphasized the harm to Basin Electric, Minnkota, MRES, and North American Coal in their summary judgment brief, Plaintiffs' motion was clearly filed on behalf of all Plaintiffs, (Pls.' Mot. for Summ. J. at 2 [Doc. No. 135]; Pls.' Mem. Supp. Mot. for Summ. J. at 1 [Doc. No. 137].)  Moreover, summary judgment on Plaintiffs' § 1983 claim arising under the Dormant Commerce Clause was granted to all Plaintiffs, Heydinger I, 15 F. Supp. 3d at 919, a decision that the Eighth Circuit affirmed. Heydinger III, 825 F.3d at 914.

### 2.   Private Plaintiffs

As previously noted, in referring the matter of appellate attorneys' fees, the Eighth Circuit directed this Court to ask the parties to address whether the presence of additional private plaintiffs justifies a fee award even if North Dakota and the Industrial Commission are ineligible.  (Heydinger (8th Cir. July 27, 2016) [Doc. No. 276 at 2].) Plaintiffs answer this question in the affirmative, noting that this Court and the Eighth Circuit unanimously found that Basin Electric, Minnkota, and MRES experienced injury and harm in their ability to conduct business and/or were threatened with injury and harm by Defendants' obligations to enforce Minn. Stat. § 216H.03, subd. 3(2)-(3), sufficient to confer standing.  (Pls.' Supp'l Mem. at 8 [Doc. No. 280]) (citing Heydinger I, 15 F. Supp. 3d at 901-03; 905-06; aff'd, 825 F.3d at 912).  But Defendants respond to the question in the negative, arguing that the North Dakota Attorney General is legally barred from representing private parties and that the fees and costs paid by North Dakota are not recoverable by the remaining Plaintiffs.  (Defs.' Supp'l Opp'n at 8-9 [Doc. No. 283].) Defendants point to statements on the North Dakota Attorney General's website, stating that the office is "prohibited by law from providing legal services to the public."  (Id. at 8) (citation omitted).  They also contend that Plaintiffs have provided no evidence that the private Plaintiffs incurred fees in this case.  (Id.)

The Court disagrees with Defendants' position.  First, as to whether the private Plaintiffs incurred fees, "Plaintiffs" (plural) retained Winthrop & Weinstine to represent them, were issued invoices, and paid the invoices.  (Boyd Aff. ¶¶ 17-19 [Doc. No. 257].) As Plaintiffs observe, a prevailing party has a right to fees even where the representation

is pro bono, Voice v. Stormans Inc., 757 F.3d 1015, 1017 (9th Cir. 2014) (citing

Blanchard v. Bergeron, 489 U.S. 87, 94 (1989)), offered through legal aid, Blum v.

Stenson, 465 U.S. 886, 895 (1984), or funded by a third party, McLean v. Ark. Bd. of

Educ., 723 F.2d 45, 49 (8th Cir. 1983).  Regardless of who paid the invoices, the private

Plaintiffs are eligible for attorneys' fees.

Second, it is not the case that the North Dakota Attorney General impermissibly

provided legal services to the public in this matter.  Rather, throughout this litigation,

North Dakota and the Industrial Commission have been represented by the North Dakota

Attorney General and the law firm of Winthrop & Weinstine, as Special Assistant

Attorneys General.  (See Am. Compl. at 41-44; Pls.' First Mem. Supp. Mot. for

Attorneys' Fees ("Pls.' First Mem.") at 7-10 [Doc. No. 221]; Pls.' First Reply at 24-27

[Doc. No. 236]; Pls.' Second Mem. Supp. Mot. for Attorneys' Fees ("Pls.' Second

Mem.") at 24-27 [Doc. No. 253]; Pls.' Second Reply at 25-28 [Doc. No. 269].)

Defendants cite no authority for the proposition that private entities and governmental

entities cannot serve as joint plaintiffs in matters of common interest, nor have they

established that such parties may not cooperate under the common interest doctrine or be

represented by the same firm.  In fact, the State of Minnesota did just that in its 1994

lawsuit, filed with private entity Blue Cross and Blue Shield of Minnesota, against

numerous tobacco companies, in which the plaintiffs were represented by the same

private law firm.  See State ex rel. Humphrey v. Philip Morris, Inc., No. C1-94-8565,

1995 WL 1937124, at *1 (Minn. Dist. Ct. May 19, 1995).

For all of these reasons, the Court finds that even if Plaintiffs North Dakota and the Industrial Commission are ineligible for attorneys' fees, the private Plaintiffs would nonetheless be considered "persons" eligible for a fee award.

### B.    Prevailing Party Status

According to the Supreme Court, "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109 (1992) (citation and internal quotation marks omitted). Elaborating on this standard, the Court held that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 111-12.

Defendants argue that Plaintiffs cannot be considered "prevailing parties," because while this Court granted relief on Plaintiffs' § 1983 claim based on a violation of the Dormant Commerce Clause, only one panel member of the Eighth Circuit affirmed on that basis. (Defs.' Supp'l Opp'n at 9 [Doc. No. 283].) Defendants claim that "Plaintiffs ultimately prevailed based on preemption," (id.), for which attorneys' fees are not recoverable. (Id. at 1) (citing Soo Line R.R. Co. v. City of Minneapolis, 38 F. Supp. 2d 1096, 1101 (D. Minn. 1998)). Moreover, Defendants note that the author of the Eighth Circuit opinion stated that that he would deny attorneys' fees. (Id. at 9-10.) Further, Defendants argue that because Plaintiffs only succeeded on a hypothetical and technical challenge to an unenforced statute, Plaintiffs cannot be considered prevailing parties. (Id. at 10.)

Plaintiffs, on the other hand, argue that both this Court and the author of the Eighth Circuit's opinion, Judge Loken, ruled in Plaintiffs' favor on their fee-generating § 1983 Dormant Commerce Clause claim.  (Pls.' Supp'l Mem. at 4 [Doc. No. 280].)  As noted, another member of the appellate panel, Judge Colloton, declined to rule on the constitutional claim under a constitutional avoidance approach.  Heydinger III, 825 F.3d at 927-29  (Colloton, J., concurring).  Plaintiffs argue that in such cases, under the "avoidance exception," when a court avoids reaching a constitutional question where a party is entitled to relief on a non-fee-generating, dispositive claim, the prevailing party may still recover attorneys' fees under § 1988 in certain circumstances.  (Pls.' Supp'l Mem. at 2 [Doc. No. 280]) (citing H.R. Rep. No. 94-1558, at 4, n.7 (1976) ("In some instances, . . . the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive.  In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim."))  As to Defendants' contention that Plaintiffs prevailed on a technical challenge, Plaintiffs assert that they obtained precisely the relief they sought, in a manner that has altered the Minnesota Department of Commerce's and Minnesota Public Utilities Commission's behavior toward Plaintiffs by preventing those entities from enforcing the statute against them. (Pls.' App. Br. at 6-10.)

### 1.    Prevailing Party

A plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.  Farrar, 506 U.S. at 111-12.  In Gerling Global Reinsurance Corp. of Am. v. Garamendi, 400 F.3d 803, 806 (9th Cir. 2005), opinion amended on denial of reh'g, 410 F.3d 531 (9th Cir. 2005), the court found that the plaintiffs had prevailed where they not only obtained "some" relief on the merits of their claim, but received all of the relief sought in the form of a permanent injunction against the enforcement of a California statute.

This Court found in favor of Plaintiffs on summary judgment and awarded them the benefit they sought in bringing this lawsuit—a declaration that Minn. Stat. § 216H.03, subd. 3(2)-(3), violates the U.S. Constitution; and an injunction prohibiting Defendants and their successors from enforcing those provisions.  This was not merely a "hypothetical and technical" victory.  Rather, this Court specifically found in its Summary Judgment Order that the challenged provisions had already had, and would have, a direct negative effect on Plaintiffs' business.  For example, the Minnesota Department of Commerce had questioned Plaintiff Basin Electric's transfer of power from its Dry Forks facility to service its North Dakota load.  See Heydinger I, 15 F. Supp. 3d at 905-06.  Thus, the declaratory and injunctive relief preventing Defendants from enforcing those provisions necessarily alters Defendants' behavior toward Plaintiffs, to Plaintiffs' benefit, contrary to the insufficient "technical" victories discussed in Farrar.

While the Eighth Circuit's affirmance of this Court's decision provided additional rationales, Heydinger III, 825 F.3d at 919-29, discussed below, it did not alter this Court's judgment which granted all of Plaintiffs' requested relief.  Judge Loken affirmed on the same basis as this Court, under the Dormant Commerce Clause.  Id. at 919-22. Although Judge Murphy disagreed with Judge Loken's analysis, she nevertheless affirmed the judgment.  Id. at 923-27 (Murphy, J., concurring).  Judge Colloton, who separately concurred, declined to address the merits of the Commerce Clause issue, but also affirmed this Court's judgment without modification.  Id. at 927-29.  (Colloton, J., concurring).  Because Plaintiffs obtained the requested relief on their § 1983 claim in a way that materially altered the relationship between the parties by modifying Defendants' behavior, to Plaintiffs' benefit, the Court again finds that Plaintiffs "prevailed" consistent with Farrar.  See Heydinger II, 2014 WL 7157013, at *3 (finding that Plaintiffs are prevailing parties for purposes of § 1988).

## 2.      The § 1988 -Avoidance Exception

Having found that Plaintiffs are a "prevailing party," the Court now must determine whether Plaintiffs can be awarded attorneys' fees under § 1988 when the appellate panel provided different legal rationales, some of which were non-fee-generating, for the affirmance of this Court's ruling, which was based on a fee-generating legal rationale.  See Rogers Grp., 683 F.3d at 911 (addressing question of whether a party "prevailed under § 1988" under similar circumstances, after first determining that plaintiffs were a prevailing party).

The Eighth Circuit has observed that ordinarily, attorney's fees under § 1988 are available to a prevailing civil rights plaintiff who "obtain[s] some relief on the merits of his claim." D.C., Inc. v. Missouri, 627 F.3d 698, 700 (8th Cir. 2010) (quoting Farrar, 506 U.S. at 111.)  Under the avoidance exception, however, "when a district court 'grants relief on a state-law claim in order to avoid a constitutional issue, it may award attorney's fees if the constitutional claim was 'substantial' and both the constitutional and the state-law claims arose out of a 'common nucleus of operative fact.'"  Id. (citing Skokos v. Rhoades, 440 F.3d 957, 962 (8th Cir. 2006)).  A claim is considered "insubstantial" if it is "essentially fictitious," "wholly insubstantial," "obviously frivolous" or "obviously without merit" and "its unsoundness so clearly results from the previous decisions of [the Supreme C]ourt as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."  Hagans v. Levine, 415 U.S. 528, 537 (1974) (citations omitted).   Claims "arise from a common nucleus of operative fact" where a party would "ordinarily be expected to try them all in one judicial proceeding."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Here, there is no question that the Dormant Commerce Clause claim was substantial and non-frivolous, as it formed the basis for this Court's ruling as well as for the author of the appellate panel's ruling.  Moreover, Plaintiffs' § 1983 claim based on a violation of the Dormant Commerce Clause and their preemption claim arose from a common nucleus of operative fact:  facial challenges based on the enactment and language of the Minnesota statute.  See also Emery v. Hunt, 272 F.3d 1042, 1046-47 (8th Cir. 2001) (finding state and federal constitutional claims related for purposes of

22

attorneys' fees when both claims challenged legislative action resulting in redistricting);

Gerling, 400 F.3d at 809 (holding that preemption claim and Commerce Clause claim

were sufficiently alike where they arose from the state's attempted enforcement of a

statute).  A party would therefore be expected to try these claims in one proceeding.  See

Gibbs, 383 U.S. at 725.

The avoidance exception is "rooted in the legislative history of § 1988."  D.C., 627

F.3d at 700 (citing Maher v. Gagne, 448 U.S. 122, 132-33 (1980)).  Discussing this

history, the Eighth Circuit cited the following from the Report of the House Judiciary

Committee:

> To the extent a plaintiff joins a claim under one of the statutes enumerated
> in [the Act] with a claim that does not allow attorney fees, that plaintiff, if it
> prevails on the non-fee claim, is entitled to a determination on the other
> claim for the purpose of awarding counsel fees.  Morales v. Haines, 486
> F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees
> may involve a constitutional question which the courts are reluctant to
> resolve if the nonconstitutional claim is dispositive.  Hagans v. Lavine, 415
> U.S. 528 (1974).  In such cases, if the claim for which fees may be awarded
> meets the 'substantiality' test, see Hagans v. Lavine, supra; United Mine
> Workers v. Gibbs, 383 U.S. 715 (1966), attorneys' fees may be allowed
> even though the court declines to enter judgment for the plaintiff on that
> claim, so long as the plaintiff prevails on the non-fee claim arising out of a
> 'common nucleus of operative fact[.'] United Mine Workers v. Gibbs,
> supra at 725.

Rogers Grp., 683 F.3d at 911-12 (alterations in original) (quoting H.R. Rep. No. 1558,

94th Cong., 2d Sess. 4 n. 7 (1976)).

As noted by the Fifth Circuit in Planned Parenthood of Houston v. Sanchez, 480

F.3d 734, 739 (5th Cir. 2007), while the avoidance exception originated in "in the context

of successful pendant state law claims," it has been applied to other successful, related

claims.  For instance, the Supreme Court has held that attorney's fees may properly be awarded in a case in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim.  Maher, 448 U.S. at 132; see also Espino v. Besteiro, 708 F.2d 1002, 1008 (5th Cir. 1983).  Other courts have noted that attorney's fees may be awarded where the plaintiff prevails on a non-fee-generating federal constitutional claim.  Planned Parenthood of Houston, 480 F.3d at 739 (citing Gerling, 400 F.3d at 808) (observing that where a plaintiff prevails on a § 1983 claim and a Supremacy Clause claim based on a "common nucleus of operative facts," the plaintiff may recover attorneys' fees for both claims).  In a slightly different, but related vein, in cases in which a plaintiff prevails on a non-§ 1983 claim which is accompanied by an undecided § 1983 claim, an attorney's award under § 1988 may be appropriate under the following circumstances:  (1) if the § 1983 claim is sufficiently "substantial" to support the invocation of federal jurisdiction; (2) it arises from the same nucleus of operative fact as the claim on which the plaintiff prevailed; and (3) the § 1983 claim is reasonably related to the plaintiff's ultimate success.  See Smith v. Robinson, 468 U.S. 992, 1002, 1007 (1984); Maher, 448 U.S. at 133 n. 15; Scurlock v. City of Lynn Haven, Fla., 858 F.2d 1521, 1527 (11th Cir.1988); Seaway Drive–In, Inc. v. Township of Clay, 791 F.2d 447, 454 (6th Cir.1986); McDonald v. Doe, 748 F.2d 1055, 1056 (5th Cir.1984).

Cases in which the avoidance exception arises—whether accepted or rejected—provide guidance here.  In Rogers Group, the plaintiffs were operators of a limestone quarry who opposed the enforcement of a city ordinance regulating rock quarries.  683 F.3d at 905-06.  The plaintiffs sought relief under Arkansas state law as well as § 1983.

24

Id.  Ruling on the plaintiffs' motion for a preliminary injunction to enjoin the city from enforcing the ordinance, the district court, applying Arkansas state law, noted that whether a lawful activity constitutes a nuisance is subject to judicial determination.  Id. at 906.  Because no court had determined that the plaintiff's quarry was a nuisance, the district court found that Rogers Group was likely to prevail on the merits of its state law claim, found no need to address the additional bases of the plaintiffs' claims, and granted the preliminary injunction.  Id.  Even though the district court had not reached the merits of Rogers Group's § 1983 claim, it granted the motion for attorneys' fees under § 1988.  Id. at 907.  The Eighth Circuit affirmed, finding that substantial federal claims, in the form of Due Process and unconstitutional takings claims, arising from the same nucleus of operative fact, were raised by the allegations of the complaint.  Id. at 913.  Whether the claims arose under Arkansas law or the U.S. Constitution, the court found that they all stemmed from a common factual nucleus:  "the City's passage of an ordinance regulating rock quarries, including Rogers Group's Quarry."  Id.  Accordingly, the court held that Rogers Group was a prevailing party under § 1988, entitled to attorneys' fees, even though the district court never reached the § 1983 claims.  Id.

The facts before this court are even stronger for the application of the avoidance exception than those in Rogers Group.  Unlike Rogers Group, this Court ruled on the basis of a constitutional, fee-generating claim—a rationale that was affirmed by one member of the appellate panel and certainly not rejected by another member of the panel.

In a case directly on point, Automobile Club of New York, Inc. v. Dykstra, 520 F.3d 210, 217 (2d Cir. 2008), a roadside assistance and towing company challenged the

tow truck licensing system of the New York City Department of Consumer Affairs.  The

district court invalidated portions of the licensing scheme on three bases:  (1) it was

preempted by the Federal Aviation Administration Authorization Act of 1994; (2) it

violated the Dormant Commerce Clause by imposing a high toll on tow trucks; and (3) it

violated the Fourth and Fourteenth Amendments by authorizing the seizure of trucks

without probable cause.  Id. at 214.  The district court awarded the plaintiff its attorney's

fees and costs.  Id.  On appeal, the Second Circuit upheld the award, finding that even

though the preemption claim did not give rise to a federal right enforceable under § 1983,

the plaintiff's Dormant Commerce Clause claim supported the district court's award of

fees.  Id. at 217.

Faced with different facts, including no constitutional challenge to the statute in

question, the Eighth Circuit found the avoidance exception inapplicable in D.C., 627 F.3d

at 698, an opinion authored by Judge Loken.  There, a retail store, Dirt Cheap Cigarettes

and Beer ("D.C."), prevailed in a state forfeiture proceeding against the State of Missouri

relating to the seizure of numerous cartons of cigarettes on the grounds that the seizure

was not permitted by state statute.  Id. at 699-700.  The store then filed a federal § 1983

action asserting a constitutional violation, for which the store sought a declaration that the

Missouri statute did not authorize the seizure, a declaration that the seizure violated the

store's constitutional rights, an injunction prohibiting future seizures against the store,

and damages and attorneys' fees.  Id. at 699.  In the federal action, the district court

declined to make a declaration on Missouri state law, granted summary judgment to the

defendants on the federal claims, and denied the request for attorneys' fees.  Id.

The Eighth Circuit affirmed, finding that while the defendants' conduct was not authorized under Missouri law, the store never challenged the constitutionality of the statute itself before the district court.  Id. at 700.  Rather, D.C. "focus[ed] on what the defendants did, not on the statute they claimed allowed them to do it."  Id.  The Eighth Circuit therefore held that the Missouri state court ruling addressed only the meaning of the Missouri statute, but "it could not have provided a basis for the district court to avoid DC's claims that the defendants' past conduct was unconstitutional."  Id.  As the Eighth Circuit noted, "Unlike other avoidance exception cases . . . , here the district court . . . actually decided each of the federal constitutional questions presented."  Id. at 701.  The court therefore found that the avoidance exception was inapplicable and the store was not a prevailing party.  Id.  The denial of attorneys' fees, the Eighth Circuit found, was "consistent with our view that a party does not 'prevail' when it brings both federal constitutional claims and state-law tort claims, succeeds on a state-law claim, but loses on the federal constitutional claims."  Id. (citing Reel v. Ark. Dep't of Corr., 672 F.2d 693, 698 (8th Cir. 1982)).  Further, the court concluded that the purpose of § 1983, to place the federal courts between the states and the people, to protect the people's federal rights, would not be effectuated with a fee award, since no federal interest was served.  Id. at 702.

D.C. is so distinguishable from the facts of this case that it essentially dictates the opposite result.  Here, Plaintiffs squarely challenged the constitutionality of the Minnesota statute.  Moreover, unlike the plaintiff in D.C., Plaintiffs in this action prevailed on their fee-generating constitutional claim before this Court, a rationale that

was adopted by one member of the appellate panel.  Again, another member of the panel simply declined to address the fee-generating claim, but affirmed judgment.  In contrast, in D.C., the federal court expressly rejected all of the plaintiff's constitutional claims. 627 F.3d at 701.

In the face of this authority regarding the avoidance exception, Defendants offer little in rebuttal in their supplemental opposition memorandum, other than restating that the Eighth Circuit's affirmance of summary judgment involved different rationales, including non-fee-generating rationales.  (Defs.' Supp'l Opp'n at 9-10 [Doc. No. 283].) Defendants rely solely upon a decision of this Court, Soo Line, 38 F. Supp. 2d at 1101, for the proposition that "[a] preemption claim does not allow for the recovery of attorney fees."  (Id. at 1.)  While the Court does not disagree with that statement as a general proposition, Soo Line, and the cases on which it relies, are inapplicable.  Notably, Soo Line does not even address the avoidance exception in its analysis of attorney's fees.  In Soo Line, the plaintiffs asserted a federal preemption claim premised on a violation of the Supremacy Clause and a Commerce Clause violation under § 1983 for the City's actions in using local regulations to prohibit the demolition of buildings located on railroad property.  38 F. Supp. 2d at 1097.  The Court did not find it necessary to address the merits of the plaintiff's Commerce Clause argument, and instead found that the local regulations were preempted by the Interstate Commerce Commission Termination Act. Id. at 1101.  Finding that "a federal preemption claim premised upon a violation of the Supremacy Clause is not cognizable under [§ 1983]," the Court denied the plaintiffs' request for attorney's fees.  Id. (citing Gustafson v. City of Lake Angelus, 76 F.3d 778

(6th Cir. 1996); <u>Md. Pest Control Ass'n v. Montgomery Cnty., Maryland</u>, 884 F.2d 160

(4th Cir. 1989); <u>Segundo v. City of Rancho Mirage</u>, 813 F.2d 1387 (9th Cir. 1987)).

Again, although the Court sought to avoid the constitutional question under the

Commerce Clause by deciding on the basis of preemption, <u>id.</u>, it did not address whether

the avoidance exception applied to the plaintiff's request for attorney's fees.  <u>Id.</u>

      Unlike the facts of <u>Soo Line</u>, here, this Court based its ruling on Plaintiffs' fee-

generating Commerce Clause claim under § 1983.  So too did the author of the Eighth

Circuit's opinion affirming the grant of partial summary judgment in Plaintiffs' favor.

<u>Heydinger III</u>, 825 F.3d at 919-22.  Moreover, the question of the applicability of the

avoidance exception is squarely before the Court.

      The cases on which <u>Soo Line</u> relies are likewise distinguishable.  In <u>Gustafson</u>, the

court observed that a claim premised on a violation of the Supremacy Clause through

preemption is not viable under § 1983.  <u>Gustafson</u>, 76 F.3d at 792 (internal citation

omitted).  But, there, ruling on the merits of the plaintiff's § 1983 claim, the court

expressly rejected his Due Process and Equal Protection claims; the district court's denial

of attorney's fees was therefore deemed proper.  <u>Id.</u>  Here, of course, the Court accepted

Plaintiffs' Commerce Clause claim as the basis for its ruling on summary judgment, as

did the author of the Eighth Circuit's opinion affirming that judgment.  In <u>Md. Pest</u>

<u>Control</u>, the court found that the plaintiff's successful preemption argument under the

Federal Insecticide, Fungicide, and Rodenticide Act, grounded in the Supremacy Clause,

did not create a civil rights under § 1983, nor did it entitle plaintiff to attorney's fees

under § 1988.  <u>Md. Pest Control</u>, 884 F.2d at 162.  Unlike the instant matter, the plaintiff

in Md. Pest Control did not assert any fee-generating claims. Segundo similarly involved a ruling on the basis of Supremacy Clause preemption, 813 F.3d at 1394, without any fee-generating claims alleged.

For all of the foregoing reasons, the Court finds that the avoidance exception is applicable here to justify an award of attorneys' fees. First, both this Court and the author of the appellate opinion ruled on the basis of a fee-generating claim—Plaintiffs' § 1983 claim based on the violation of the Dormant Commerce Clause. Second, Judge Colloton invoked the constitutional avoidance doctrine when he, as part of the appellate panel, unanimously affirmed all of the relief that Plaintiffs sought and the District Court had granted.

Again, the Court agrees with the general proposition that absent the avoidance exception, attorney's fees are not available for relief grounded in preemption. However, Defendants end their analysis there. But under the avoidance exception, a plaintiff who raises a federal civil rights claim and a claim for which attorneys' fees are not available, may be entitled to a fee award even though the claim on which relief was awarded was the non-fee-generating claim. Maher, 448 U.S. at 122; Rogers Group, 683 F.3d at 903; Automobile Club, 520 F.3d at 210; Gerling, 400 F.3d at 803. Here, the argument for fees is actually stronger than in a more typical avoidance exception case, as Plaintiffs prevailed under a fee-generating, substantial claim at the district court level and under a fee-generating, substantial claim and a non-fee-generating, substantial claim or theory at the appellate level. Both claims arose from a common nucleus of operative fact, namely, facial challenges based on the enactment and language of the Minnesota statute. Under

these facts, the Court finds that the avoidance exception applies and Plaintiffs are eligible for attorneys' fees, assuming that they meet the remaining requirements, discussed below.

### C.    Special Circumstances

Even if a party is found to have prevailing party status, a court has discretion to deny a fee award if "special circumstances" render the award unjust. Peter v. Jax, 187 F.3d 829, 837 (8th Cir. 1999) (citation omitted). However, "[b]ecause the language of § 1988 does not include the 'special circumstances' exception, this judicially created exception should be narrowly construed." Id. (citation and internal quotation marks omitted). Thus, "'[a] strong showing of special circumstances is necessary to support a denial of attorney fees.'" Hatfield, 877 F.2d at 720 (8th Cir. 1989) (quoting J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985)).

 Defendants argue that a fee award would be unjust in this case for two primary reasons:  (1) "the case is not about individual civil rights, it is about sovereign interests"; and (2) the challenged statute has "never been enforced, interpreted, or applied by the State of Minnesota, and was litigated based on an interpretation the State adamantly disavowed."  (Defs.' Supp'l Opp'n at 10 [Doc. No. 283].)

As to the first point, Plaintiffs, as noted earlier, disagree that this litigation was brought in North Dakota's sovereign capacity.  (Pls.' Supp'l Reply at 2-3 [Doc. No. 285].)  As to the second point, Plaintiffs assert that both this Court and the Eighth Circuit "have recognized the substantial and continued threatened harm posed by the statute to Plaintiffs,"  (id. at 4-5) (citing Heydinger I, 15 F. Supp. 3d at 901-06, aff'd, 825 F.3d at

916-18), despite Defendants' minimization of the harm during five years of vigorous litigation.

This Court has previously found that Defendants have not made a strong showing of special circumstances such that a fee award in this case would be considered unjust. Heydinger II, 2014 WL 7157013, at *5.  And, as discussed earlier, North Dakota did not bring this litigation in its sovereign capacity.  Even if it had, the private Plaintiffs would still be eligible for attorneys' fees.  Further, the Court agrees with Plaintiffs that Defendants' attempts to minimize Plaintiffs' results ring hollow.

In Defendants' appellate briefing, as in their earlier briefing to this Court, they rely upon Thorsted v. Gregoire, 841 F. Supp. 1068 (W.D. Wash. 1994), for the proposition that special circumstances supporting the denial of attorneys' fees exist where the defendant officials have not yet enforced the law in question; the state officials acted in good faith; and the case was one of first impression and public interest required its adjudication.  (Defs.' App. Br. at 10.)  But as this Court explained in Heydinger II, the Ninth Circuit has expressed disapproval of Thorsted, noting that the factors discussed in that case were both unique to the case as well as being, in part, "inadequate grounds for the denial of fees."  2014 WL 7157013, at *5 (citing Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1285 (9th Cir. 2004)).  Moreover, neither a plaintiffs' ability to pay his own attorneys' fee, nor a defendant's good faith, is sufficient to justify a denial of fees.  Am. Broad. Cos. v. Ritchie, Civ. No. 08-5285 (MJD/AJB), 2011 WL 665858, at *6 (D. Minn. Feb. 14, 2011) (citing Peter, 187 F.3d at 837 (good faith); Jones v. Wilkinson, 800 F.2d 989, 991-92 (10th Cir. 1986) (ability to pay)).

In addition, as this Court observed in Heydinger II, 2014 WL 7157013, at *5, although the challenged provisions of the Minnesota statute may not have been formally enforced by Defendants, they nonetheless affected commerce in the various ways discussed above, in this Court's summary judgment order, Heydinger I, 15 F. Supp. 3d at 905-06, and as acknowledged by the Eighth Circuit.  Heydinger III, 825 F. 3d at 917 (discussing standing and observing that the summary judgment record clearly established that the prohibitions were interfering with certain Plaintiffs' ability to transmit power and enter into purchase agreements outside of Minnesota, such that "the State's assertion that there is no real threat of enforcement because [the Minnesota Department of Commerce] and the [Minnesota Public Utilities Commission] do not intend to enforce the prohibitions . . . is not credible.").  In addition, Plaintiffs have articulated a legitimate public interest that was served by the results achieved in this litigation.  Even if they had not, in Hatfield, the Eighth Circuit indicated in its citation to Wheatley v. Ford, 679 F.2d 1037 (2d Cir. 1982), that the fact "that an action provided a private benefit to a plaintiff rather than a public benefit . . . is not a special circumstance to deny § 1988 attorney's fees." Hatfield, 877 F.2d at 720.

Moreover, the fact that a fee award may come from the funds of a state does not bar the award of § 1988 fees against a state.  See Hutto v. Finney, 437 U.S. 678, 691-92 (1978) (holding that the Eleventh Amendment does not bar the award of § 1988 fees against a state); Kirchberg v. Feenstra, 708 F.2d 991, 998 n.7 (5th Cir. 1983) ("The fact

that the award of attorney's fees will eventually be borne by the taxpayer is not a 'special circumstance' sufficient to justify the denial of fees.") (citations omitted).[8]

To be sure, courts have found that special circumstances warrant the denial of fees in certain situations, particularly where the litigation is essentially rendered moot or is about to be resolved by other means.  For example, in Hechenberger v. W. Elec. Co., 786 F.2d 347, 348-49 (8th Cir. 1986), the Eighth Circuit affirmed the denial of attorneys' fees for what was essentially a frivolous appeal.  There, the defendant-employers had abandoned their challenged employment practice, causing the district court to grant the defendants' summary judgment motion, finding no live controversy between the parties. Id.  The plaintiffs nevertheless appealed the entry of summary judgment, "despite their knowledge that the employers would not [engage in the challenged employment practice]."  Id. at 348.  When the plaintiffs' appeal was summarily denied as moot, they returned to the district court with the request for attorneys' fees.  Id.  For similar reasons, in Peter, 187 F.3d at 837-38, the Eighth Circuit also upheld the denial of attorneys' fees, finding that special circumstances made an award of fees unjust.  There, although appellants' counsel was aware that a pending Supreme Court case would likely decide the matter, appellants nevertheless continued to litigate and incur fees.  Id.

The facts of this case are quite unlike those in Hechenberger and Peter.  As Plaintiffs' observe, if this were an inconsequential case, Defendants could have defaulted

---

[8]     Coincidentally, among the authorities cited by the Supreme Court in Hutto for the observation that the practice of awarding costs against the States goes back decades was North Dakota v. Minnesota, 263 U.S. 583 (1924).  Granted, the case was not a § 1983 action, but it was a case in which the costs of litigation involving water damage to property were taxed against North Dakota, the defeated party.

or stipulated.   (Pls.' Supp'l Reply at 5 [Doc. No. 285].)  Instead, they vigorously

defended against Plaintiffs' claims.  Moreover, "after losing in the District Court and

after losing again in the Eighth Circuit, Minnesota's Governor publicly declared the

significance of this case in the strongest terms and vowed to fight on."  (Id. at 5) (citing

Press Releases, Governor Dayton Seeks Appeal of Eighth Circuit Court of Appeals'

Ruling on Minnesota's Next Generation Energy Act (June 22, 2016), http://mn.gov/

governor/newsroom/index.jsp?id=1055-246642; Statement from Governor Mark Dayton

(April 18, 2014), http://mn.gov/governor/newsroom/index.jsp?id=1055-99395.)  The

Court agrees with Plaintiffs that Defendants' actions contradict the arguments they now

make in opposition to Plaintiffs' requests for attorneys' fees and costs.   Accordingly, the

Court finds that Plaintiffs are entitled to an award of attorneys' fees under § 1988.[9]   The

Court therefore turns to a determination of the amount to which Plaintiffs are entitled.

### D.     The Lodestar Calculation—Hourly Rates

The amount of an attorney's fee award must be determined on the facts of each

case and is within the district court's discretion.  Hensley v. Eckerhart, 461 U.S. 424,

429, 437 (1983); see Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted)

("Attorney's fees are within the broad discretion of the district court . . . .").  The starting

point for determining a reasonable attorneys' fee is the "'lodestar'" calculation, which is

the number of hours reasonably expended on the litigation multiplied by a reasonable

---

[9]     While the Court acknowledges that the Eighth Circuit, in referring Plaintiffs'
appellate fee petition to this Court, stated that Judge Loken would deny Plaintiffs'
request, (Heydinger, (8th Cir. July 27, 2016) [Doc. No. 276 at 2]), the Court respectfully
disagrees, given the facts before the Court and the legal authorities cited above.

hourly rate.  Hanig, 415 F.3d at 825 (citation omitted); see Hensley, 461 U.S. at 433.  The

court may consider the following factors when determining whether to adjust the lodestar

amount upward or downward:

> "(1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and
> (12) awards in similar cases."

United HealthCare Corp. v. Am. Trade Ins. Co., 88 F.3d 563, 574 n.9 (8th Cir. 1996)

(quoting Hensley, 461 U.S. at 430 n.3).  However, "many of these factors usually are

subsumed within the initial [lodestar] calculation."  Hensley, 461 U.S. at 434 n.9.

Here, the Court considers Plaintiffs' request for fees and costs related to their work

before this Court together with their request for fees and costs incurred in their appellate

work before the Eighth Circuit.  Plaintiffs seek to recover $1,045,202.00 in district court-

related fees based on approximately 2,745.1 hours of work, and an award of nontaxable

costs.  (Pls.' Second Mem. [Doc. No. 253]; Boyd Aff. [Doc. No. 257], Ex. 17.)[10]  In

---

[10]     In Plaintiffs' petition regarding their district court-related fees, Plaintiffs seek only
the amount of fees and costs incurred in the district court proceedings, and not the
amount of fees and costs incurred in the appellate court proceedings.  (See Pls.' Second
Mem. at 2 [Doc. No. 253].)  However, while their chart lists the "total hours," "total
fees," and total fees "less appeal fees," it does not list the total hours "less appeal hours."
(See Boyd Aff. [Doc. No. 257], Ex. 17.)  Accordingly, the Court has approximated the
number of hours Plaintiffs' counsel spent on appellate work by dividing the appeal fees
listed for 2014 and 2015 for each attorney by that attorney's hourly rate for that year and
adding up those numbers, for a total of 490.7 hours.  Subtracting that number from the

addition, Plaintiffs seek to recover $295,346.50 in appellate court-related fees based on approximately 682.25 hours of work, and an award of nontaxable costs.  (See Boyd App. Aff. [Doc. No. 281], Ex. I.)[11]   In addition, Plaintiffs seek to recover the fees and costs incurred in bringing their fee requests before this Court and the Eighth Circuit.  (Pls.' Second Mem. at 24 [Doc. No. 253]; Pls.' App. Br. at 19.)

Defendants argue that the requested amounts are excessive and unwarranted and, accordingly, request a "substantial reduction."  (Defs.' Opp'n at 2 [Doc. No. 266].) Although the Court does not agree that a substantial reduction is warranted, it does find that minor adjustments are appropriate, as discussed below.

Plaintiffs seek to recover attorneys' fees based on their legal team's hourly rates ranging from $120 to $515 per hour.  (See Boyd Aff. ¶ 43 [Doc. No. 257] & Ex. 17 (chart of timekeepers and hourly rates).)[12]   To determine whether an hourly rate is reasonable, the court looks at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11;

_____

"total hours" number of 3,235.80 shows that the total number of hours expended on this case, less hours devoted to appellate work, was approximately 2,745.1 hours.

[11]    In their brief to the Eighth Circuit, Plaintiffs request a slightly higher amount in appellate fees, $296,682.  (Pls.' App. Br. at 17.)  However, their chart listing the relevant timekeepers, their hourly rates, and the aggregate amounts of time billed by year for appellate work results in a total amount of $295,346.50.  (See Boyd App. Aff. [Doc. No. 281], Ex. I (chart of timekeepers and hourly rates).)  As Plaintiffs do not offer an explanation for the discrepancy, the Court considers the smaller amount as the requested amount for appellate fees.

[12]    The hourly rates for Plaintiffs' counsel increased by $20 per hour per attorney in January 2015, with the rate of the highest billing attorney increasing to $535 per hour. (See Boyd App. Aff. [Doc. No. 281], Ex. I.)

accord McDonald v. Armontrout, 860 F.2d 1456, 1458–59 (8th Cir. 1988).  Also, "courts may draw on their own experience and knowledge of prevailing market rates."  Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005).  However, the fee applicant bears the burden of producing evidence to support the rates charged.  Hensley, 461 U.S. at 433.

Plaintiffs have submitted the affidavits of their lead counsel and charts showing that Plaintiffs' legal team has been comprised of seven to nine attorneys, one law clerk, three paralegals, and three to five research/litigation support staff—all from the law firm of Winthrop & Weinstine, P.A.—who had varying degrees of involvement over the course of four years of litigation.  (See Boyd Aff. [Doc. No. 257], Ex. 17; Boyd App. Aff. [Doc. No. 281], Ex. I.)  The attorneys' hourly rates ranged from $225 per hour for an attorney who had one year of experience, to $515 per hour for the attorneys who had at least thirty years of experience, (see Boyd Aff. ¶¶ 25-27 [Doc. No. 257] & Exs. 11-12, 17), with a $20 per hour increase per attorney in January 2015.  (See Boyd App. Aff. [Doc. No. 281], Ex. I.)  The supporting affidavits describe the attorneys' personal legal experience and their roles on the legal team.  (See Boyd Aff. ¶¶ 21-31 [Doc. No. 257] & Exs. 8-16; Boyd App. Aff. ¶¶ 14-22 [Doc. No. 281] & Exs. B-H.)  The law clerk's hourly rate was $150 per hour, the paralegals' hourly rates ranged from $175 to $230 per hour, and the research/litigation support staff members' hourly rates ranged from $120 to $210 per hour, (see Boyd Aff. [Doc. No. 257], Ex. 17), with an increase to $220 per hour for the research/litigation support staff members in January 2015.  (See Boyd App. Aff. [Doc. No. 281], Ex. I.)

Not only does Plaintiffs' lead counsel on this matter, Thomas Boyd (who has practiced in the Minneapolis community for over twenty-five years), opine that the hourly rates charged for the attorneys' and other professionals' services are within the range of hourly rates charged by other comparable firms in the Twin Cities, (see id. ¶¶ 44-46), but Plaintiffs have also submitted an affidavit of James Simonson (their expert witness, who has practiced in this community for over fifty-five years) that reflects the same opinion, (see Simonson Aff. [Doc. No. 254] ¶¶ 18-19, 21).  In addition, a comparison to other cases shows that the rates are consistent with rates awarded in this District in other § 1983 cases.  See, e.g., Madison v. Willis, Civ. No. 09-930 (DWF/AJB), 2011 WL 851479, at *1 (D. Minn. Mar. 9, 2011) (allowing hourly rates ranging from $100 to $125 for paralegals and ranging from $180 to $600 for attorneys for purposes of calculating reasonable attorneys' fees under § 1988).

Defendants raise two objections to these hourly rates.  First, they contend that Plaintiffs' counsel should have charged different rates for "core" and "non-core, administrative, or clerical" work.  (See Defs.' Opp'n at 28 [Doc. No. 266].)  However, as Plaintiffs point out, the case that Defendants rely upon, Family Winemakers of California v. Jenkins, Civ. No. 1:06-cv-11682-RWZ (D. Mass. June 8, 2011), is based on the Boston legal market, and there is no evidence in this case that the same type of blended rate is applied in the Twin Cities market.  In fact, Mr. Simonson submitted a supplemental affidavit stating that there is no custom or practice in the Twin Cities market that requires legal services to be billed in a two-tier manner.  (Supp'l Simonson Aff. ¶ 2 [Doc. No. 272].)

Second, Defendants argue that activities such as "collecting and organizing documents, uploading documents in electronic databases, and other similar services," as performed by the paralegals and research/litigation support staff members, do not command a billing rate of over $200 per hour.  (Defs.' Opp'n at 28 [Doc. No. 266].) However, Defendants cite to no authority for their argument, and, as discussed above, Plaintiffs have submitted support in the form of the affidavits of Mr. Boyd and Mr. Simonson for the proposition that the fees charged were reasonable.  Therefore, the Court finds that the hourly rates charged by Plaintiffs in this matter are reasonable.

### E.    The Lodestar Calculation—Number of Hours Expended

The fee applicant bears the burden of producing evidence to support the number of hours worked and should make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 433-34.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  Id. at 433.

For their work before the district court, Plaintiffs' counsel submitted over three hundred pages of detailed contemporaneous time records listing the work performed by each member of the legal team and the time it took to accomplish that work.  (See Boyd Aff. [Doc. No. 257], Ex. 7 (filed under seal).)[13]  According to Mr. Boyd, the legal

---

[13]    Defendants argue that the Court should unseal this exhibit because billing statements are not generally privileged or protected and because the public has a right of access to documents filed with the Court.  (Defs.' Opp'n at 41-43 [Doc. No. 266].) Plaintiffs argue that there is no strong presumption in favor of public access to these filings and that the public's right of access should be weighed against a party's attorney-client and work product privileges.  (Pls.' Second Reply at 22 [Doc. No. 269].)

services rendered include:  pre-litigation investigation, research, and drafting; defending

Defendants' motion for partial judgment on the pleadings; opposing the environmental

groups' motion to intervene; preparing initial disclosures and written discovery;

responding to Defendants' written discovery; preparing expert witness disclosures;

responding to the environmental groups' motion to participate in discovery; preparing for

and defending the depositions of Plaintiffs' fact and expert witnesses; deposing

Defendants' fact and expert witnesses; opposing Defendants' motion to quash

depositions; preparing Plaintiffs' summary judgment motion and opposing Defendants'

summary judgment motion; opposing Defendants' motion to strike jury demand;

preparing a bill of costs and responding to objections; and preparing the first round of

briefing on the motion for attorneys' fees.  (See id. ¶¶ 3, 13.)  Mr. Boyd and Mr.

Simonson have both attested to the fact that the amount of time billed was reasonable and

appropriate.  (See id. ¶¶ 20, 42, 48; Simonson Aff. ¶¶ 15–17 [Doc. No. 254].)  And, Mr.

---

Moreover, Plaintiffs assert that parties in this District have the option of submitting
unredacted versions of their invoices under seal to avoid a lack of transparency to the
opposing parties and the Court.  (Id. at 22-23.)

   The Court finds that Plaintiffs' invoices may remain under seal.  Although there is
a common law presumption in favor of public access to judicial records, the Eighth
Circuit has rejected the notion that the presumption is strong.  United States v.
McDougal, 103 F.3d 651, 657 (8th Cir. 1996).  Rather, the right to public access should
be evaluated in light of the facts and circumstances of the case.  Id. at 658.  And, courts in
this District have permitted parties to file their attorneys' billing invoices under seal in
conjunction with an application for attorneys' fees.  See Nationwide Payment Solutions,
LLC v. Plunkett, 831 F. Supp. 2d 337, 340 (D. Minn. 2011); see also Protective Life Ins.
Co. v. Kridner, Civ. No. 12-582 (JRT/JJG), 2013 WL 1249205, at *5 n. 11 (D. Minn.
Mar. 27, 2013) ("Fee seekers do . . . have the option of submitting unredacted versions of
. . . invoices for examination by the court and opposing counsel.") (emphasis added).
Accordingly, Defendants' request to have Plaintiffs' invoices unsealed is denied.

Boyd and Eric Swanson, the billing attorney on Plaintiffs' legal team, have verified that Plaintiffs engaged Winthrop and Weinstine to represent Plaintiffs in this matter based on an agreement that they would compensate the firm for services rendered at the firm's standard hourly rates and would reimburse the firm for all out-of-pocket costs and expenses incurred during the representation.  (Boyd Aff. ¶ 17 [Doc. No. 257]; Swanson Aff. ¶ 7 [Doc. No. 270].)  Mr. Boyd and Mr. Swanson have also verified that Plaintiffs have paid the fees and expenses invoiced in accordance with those terms.  (Boyd Aff. ¶ 19 [Doc. No. 257]; Swanson Aff. ¶ 8 [Doc. No. 270].)[14]

For their appellate work, Plaintiffs have similarly filed nearly 130 pages of detailed contemporaneous time records describing the work performed by the members of the legal team and the time it took to perform the work.  (See Boyd App. Aff. [Doc.

---

[14]    Defendants take issue with the fact that Plaintiffs have not produced a copy of the engagement agreement or evidence of the amounts paid, arguing that they and the Court have been deprived of information necessary to understand whether the invoices were paid in full in accordance with the parties' engagement.  (Defs.' Opp'n at 2-3 [Doc. No. 266].)  Plaintiffs, however, claim that Defendants have never made a proper request for the agreement and have not established a right or need to examine the agreement.  (Pls.' Second Reply. at 24 [Doc. No. 269].)  According to Plaintiffs, they have described the relevant terms of the agreement in the affidavits of Mr. Boyd and Mr. Swanson, rendering provision of the actual agreement unnecessary and cumulative.  (Id.)  Moreover, they claim that the agreement contains information regarding the manner in which the firm "would communicate with and receive instructions from [the] clients regarding the direction and handling of the litigation," which is protected by the attorney-client and work product privileges.  (Swanson Aff. ¶ 9 [Doc. No. 270].)  Because the terms of the engagement relevant to the fee request—and the fact of payment—have been adequately described to Defendants and the Court in the affidavits, and because the litigation is on-going, the Court agrees that Plaintiffs need not produce a copy of the actual engagement agreement.

No. 281], Ex. A (filed under seal).)[15]  Counsel coordinated the appeal on behalf of the

eight different Plaintiff parties, performing the following work:  opposing Appellants'

Motion to Dismiss Appellees' Cross Appeal; analyzing Appellants' submissions,

preparing voluminous and complex briefs and appendices; reviewing and responding to

amici supporting Appellants; coordinating and responding to amici supporting Appellees;

and preparing for and presenting oral argument.  (See id. ¶¶ 3, 7.)  As with the district

court fee request, Mr. Boyd attests that Plaintiffs engaged Winthrop and Weinstine to

represent them in the appellate work on this lawsuit and Plaintiffs agreed to compensate

the firm for services rendered at the firm's standard hourly rates and to reimburse the

firm for all out-of-pocket costs and expenses incurred.  (Id. ¶ 10.)  Mr. Boyd has also

verified that the law firm billed Plaintiffs for the appellate representation and that

Plaintiffs remitted payment in full for the invoices.  (Id. ¶¶ 10-11; 27-29.)  Again, Mr.

Boyd attests to the reasonableness of the fees with respect to Plaintiffs' appellate work

and cross references the previously-filed Simonson Affidavit regarding the

reasonableness and appropriateness of the work performed by Winthrop and Weinstine.

(Id. ¶ 33) (citing Simonson Aff. [Doc. Nos. 254 & 272].)

Defendants make several objections to the amount of time for which Plaintiffs

seek to recover fees.  First, Defendants challenge Plaintiffs' use of "block billing" to

track their time, arguing that block billing makes it impossible to identify the particular

---

[15]     Defendants argue that this exhibit should be unsealed, for the same reasons
asserted with respect to Plaintiffs' invoices for district court-related work.  (Defs.' Opp'n
to Mot. to Seal App. Ex. at 1-4.)  For the reasons noted earlier, (supra, n.13), the Court
finds that Plaintiffs' invoices for appellate-related work, found in Exhibit A to the Boyd
Appellate Affidavit, may remain under seal.

amount of time devoted to any given activity.  (See Defs.' Opp'n at 3-4, 22-23 [Doc. No. 266]; Defs.' App. Br. at 14-15.)  As an example, Defendants point to two paragraphs from one invoice, each of which lists at least seven different tasks conducted by one particular attorney.  (See Defs.' Opp'n at 3-4 [Doc. No. 266].)  Defendants contend that "Plaintiffs [seek] nearly $6,000 just for tasks set forth in these two paragraphs."  (Id. at 4.)[16]

"[B]lock billing is the lumping together of daily time entries consisting of two or more task descriptions," and the Eighth Circuit has no prohibition against the use of block billing.  King v. Turner, 05-CV-388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. April 24, 2007).  Thus, although it is true that "'[i]nadequate documentation may warrant a reduced fee,'" the Eighth Circuit has found that awarding fees based on block-billed time entries was not an abuse of discretion.  Nassar v. Jackson, 779 F.3d 547, 554 (8th Cir. 2015) (citation omitted).[17]  Moreover, according to Plaintiffs' expert witness, it is not unusual for attorneys in the Twin Cities to bill clients using a block-billing format, after reviewing those bills and removing excess or inappropriate activities or time.  (Supp'l Simonson Aff. ¶ 4.)  And, Mr. Swanson verified that he personally reviewed the invoices that were sent to Plaintiffs and "removed any excess, unrelated, unreasonable,

---

[16]    Upon examination of the invoice, it is evident that the two paragraphs are actually billed separately at $2,676.00 (for 5.3 hours) and $3,232.00 (for 6.4 hours).  (Boyd Aff. [Doc. No. 257], Ex. 7 at 6629.)

[17]    Defendants cite to two Eighth Circuit opinions in support of their argument that a reduction in the fee award due to use of block billing is appropriate, but neither of those cases mentions that block billing was used or was the cause of the reduction in fees awarded.  See Jensen v. Clarke, 94 F.3d 1191, 1203 (8th Cir. 1996); H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991).

and inappropriate activities or time, and correspondingly eliminated the fees for any such legal services."  (Swanson Aff. ¶¶ 3, 17.)  Finally, Plaintiffs paid the invoices in full and did not raise any objections to the format of the invoices for work performed before the district court, (see id. ¶¶ 16, 18), or the appellate court, (see Boyd App. Aff. ¶ 29 [Doc. No. 281]), indicating their general satisfaction as clients with the level of detail provided, see Delgado v. Mak, No. 06 C 3757, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009) ("The standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market—that is, 'the level of detail paying clients find satisfactory.'") (citation omitted). For these reasons, the Court does not find that Plaintiffs' use of block billing warrants an automatic reduction in their fee award.  And, to the extent that the Court finds it necessary to deny Plaintiffs any of their requested fees, and those fees pertain to activities that are part of an entry that also includes a description of allowable activities, the Court will apportion an appropriate percentage reduction for the non-includable activities. King, 2007 WL 1219308, at *3 (stating that, where block-billed entries specifically describe tasks accomplished, a blanket reduction for block billing is not necessary).

Second, Defendants argue that Plaintiffs seek fees for hours that were "excessive and duplicative."  (Defs.' Opp'n at 22-28 [Doc. No. 266]; Defs.' App. Br. at 14-17.) More specifically, Defendants claim that Plaintiffs' counsel:  (a) "incurred unusually high fees for each and every written product created for court," (Defs.' Opp'n at 24 [Doc. No. 266]); (b) too frequently billed for generalized research, (see id. at 25; Defs.' App. Br. at 16); (c) billed too many hours for conferring with other attorneys, including conferring

45

with each other, (Defs.' Opp'n at 23 [Doc. No. 266]; Defs.' App. Br. at 15); and (d)

overstaffed the case by, for example, sending at least two attorneys to every hearing and

deposition and having multiple attorneys work on written documents.  (Defs.' Opp'n at

26-28 [Doc. No. 266].)

    In regard to the fees for written products, Defendants seem to take issue with the

following documents and approximate number of related hours and fees:

| Complaint | N/A | $45,000.00 |
|---|---|---|
| Response to Defendants' Motion for Partial Judgment on the Pleadings | 250 hours | $100,000.00 |
| Summary judgment | 800 hours | $300,000.00 |
| Appeal | 700 hours | $295,346.50 |

(See id. at 24; Defs.' App. Br. at 15.)  However, although Defendants state generally that

these numbers are too high, they have not identified any specific entries that they claim

are unwarranted, (Defs.' Opp'n at 24-25 [Doc. No. 266]), with the exception of appellate

work performed by Mr. Boyd on July 14, 2014.  (Defs.' App. Br. at 16.)  Plaintiffs, on the

other hand, have detailed the complex nature of this case at every stage of litigation—

ranging from pre-suit investigation and analysis and mastering the technical factual

matters associated with electric power generation and transmission, to litigating cross-

motions for summary judgment on sophisticated constitutional issues involving a novel

type of legislation (see Pls.' Second Mem. at 5-7, 20 [Doc. No. 253]; Boyd Aff. ¶¶ 6-7,

13 [Doc. No. 257]), to analyzing and responding to Defendants' and amici arguments on

appeal and preparing for appellate argument.  (Boyd App. Aff. ¶ 7 [Doc. No. 281].)

Without more explanation from Defendants, the Court cannot find that the hours

requested in relation to the written documents are excessive.  Moreover, as to the entry

for appellate work performed by Mr. Boyd on July 14, 2014, the Court does not find it

unreasonable or excessive.  While Defendants argue that "time spent by experienced (and

therefore high-priced) counsel to research basic principles of law should be closely

scrutinized," (Defs.' App. Br. at 16) (citing Erickson v. City of Topeka, Kan., 239 F.

Supp. 2d 1202, 1208 (D. Kan. 2002); Coulter v. Tenn., 805 F.2d 146, 148-49 (6th Cir.

1986), abrogated by Ne. Ohio Coalition for the Homeless v. Husted, __ F.3d __, 2016

WL 4073489, at *12 , n.6 (6th Cir. 2016)), the entry in question denotes time spent not

only on researching and reviewing the case law and legal commentary on the issues on

appeal, but also time spent filing materials regarding the same, conferring regarding

Plaintiffs' motion to dismiss the cross-appeal, and preparing and drafting Plaintiffs'

opposition papers.

Defendants' complaint that Plaintiffs billed too much time on "generalized

research" or "basic principles of law" is belied by the complex nature of the issues

presented in this litigation and on appeal.  Unlike the cases Defendants rely on for

support, in which the court determined that time spent on general research regarding the

basic elements of a Title VII claim was not recoverable because such information was

"easily found and [was] not disputed," see Erickson, 239 F. Supp. 2d at 1208, or where

the trial court reduced the fee award to second chair counsel in a Title VII case

characterized by the trial judge as "simple," "tried in less than half a day," and "decided

from the bench," see Coulter, 805 F.2d at 148, the present matter was hotly disputed and

involved a state statute with no similar counterpart and, accordingly, no available legal

precedent.  Nothing about this action, both before the district court and on appeal, was

basic or simple.  Therefore, the Court declines to deduct the time claimed for research.

As for the "conferencing" and "overstaffing" categories of fees, Defendants have

simply surmised that the amounts billed are excessive.  But, the fact that multiple

attorneys were involved in a discussion about the case does not, by itself, mean that the

time spent was unreasonable or excessive.  And, on the contrary, Plaintiffs' expert has

provided his opinion that such expenses are "not unusual or inherently problematic" and,

in fact, add "considerable value."  (Supp'l Simonson Aff. ¶ 5 [Doc. No. 272]; see also

Swanson Aff. ¶¶ 19-20 [Doc. No. 270].)  In fact, Plaintiffs note that the two attorneys

primarily involved in this matter (Mr. Boyd and Brent Lorentz) had different levels of

legal experience (senior shareholder vs. senior associate) and different areas of expertise

(complex litigation vs. training as an engineer), the combination of which contributed to

Plaintiffs' success.  (See Pls.' Second Reply at 5-6 [Doc. No. 269].)  Likewise, the fact

that multiple attorneys were needed to prepare for a deposition, assist in oral argument, or

complete a brief, does not render those fees necessarily unreasonable or excessive.  See,

e.g., N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir.

1983) ("Under section 1988, prevailing parties are not barred as a matter of law from

receiving fees for sending a second attorney to depositions or an extra lawyer into court

to observe and assist.").  Indeed, Plaintiffs point out that Defendants frequently were

represented by multiple attorneys at the hearings and depositions in this matter.  (Pls.'

Second Reply at 6 [Doc. No. 269].)  Because this type of staffing is not unusual as a

general matter, and given the magnitude and complexity of this case, the Court declines to second-guess Plaintiffs' counsel's allocation of resources.

Third, Defendants contend that Plaintiffs improperly seek fees for lobbying activities and public relations, which are not recoverable under § 1988.  (Defs.' Opp'n at 28-30 [Doc. No. 266]; Defs.' App. Br. at 12-13.)  In Defendants' opposition to the district court-related fee request, they point to entries in Plaintiffs' invoices for meetings with Minnesota legislators to discuss the lawsuit and legislative proposals, consideration of pending legislation, and review of clients' statements regarding proposed legislation.  (Defs.' Opp'n at 29 [Doc. No. 266].)  They also take issue with Plaintiffs' entries related to reviewing media reports and press announcements and handling press inquiries.  (Id. at 30.)  Plaintiffs, on the other hand, argue that the time spent on legislative and media issues was de minimis.  (Pls.' Second Reply at 17 [Doc. No. 259].)  As for legislative activities, Plaintiffs argue only that the time spent monitoring proposed amendments to the NGEA was appropriate because adoption of those amendments would have changed the analysis of the merits of the lawsuit.  (Id.)  As for media-related activities, Plaintiffs argue that such activities are "unavoidable in a high profile lawsuit."  (Id.)

The Court agrees with Plaintiffs that monitoring proposed amendments to the NGEA was entirely appropriate within the scope of this litigation—i.e., a challenge to the constitutionality of that statute.  However, Plaintiffs have cited no authority to support reimbursement of the other legislative and media-related activities contained in their billing statements, and the Court finds that such activities are not recoverable under § 1988.  See, e.g., Binta B. ex rel. S.A. v. Gordon, 710 F.3d 608, 636–38 (6th Cir. 2013)

(allowing the prevailing party to recover fees for time spent reviewing the governor's reform plan that would have required modification of a consent decree, but denying fees for time spent meeting with legislators to negotiate amendments to the consent decree with the state without opposing counsel present); Yule v. Jones, 766 F. Supp. 2d 1333, 1348 (N.D. Ga. 2010) ("Fees related to media interviews and information requests . . . are not proper fee requests because they are not for legal services required to prosecute the claims asserted in the action."); United Nuclear Corp. v. Cannon, 564 F. Supp. 581, 585 (D.R.I. 1983) (attorneys for power company that prevailed on summary judgment and obtained a ruling that declared a Rhode Island statute invalid were not entitled to fees for time spent lobbying against the statute).  Therefore, the Court will deduct from the district court invoices $2,875.75 in lobbying-related fees, (see Boyd Aff. [Doc. No. 257], Ex. 7, at 6678), and $1,819.25 in media-related fees, (see id., Ex. 7, at 6459, 6464, 6473, 6498-99, 6648, 6676-77), from Plaintiffs' request.  Although Defendants' appellate brief fails to specify the objectionable appellate legislative/lobbying/media-related entries, applying the same analysis set forth above, the Court deducts the pro-rated amount of $137.81 from the appellate invoices for media-related fees.  (See Boyd App. Aff. [Doc. No. 281], Ex. A, Entry for 1/28/15 (THB).)

Fourth, Defendants argue that Plaintiffs may not recover fees for time spent preparing their Amended Complaint.  (Defs.' Opp'n at 31 [Doc. No. 266].)  More specifically, Defendants assert that the fees incurred in amending the complaint to remove the state officials who had been named in their individual capacities were unnecessary because Plaintiffs had no basis for naming them in that capacity in the first

50

instance.  (Id.)  In response, Plaintiffs argue that they are entitled to these fees because the Amended Complaint was the operative document in this case and because the complaint was amended at Defendants' request.  (Pls.' Second Reply at 13-14 [Doc. No. 269].)

Plaintiffs' Amended Complaint was filed one month after the original Complaint was filed, and five days after Defendants filed their Answer.  (See Doc. Nos. 1, 8, 9.) While the Court will not render an advisory opinion on whether it was proper for Plaintiffs to name the officials in their individual capacities at this juncture, see United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947) (citations omitted) ("As is well known[,] the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."), the Court declines to award Plaintiffs' requested fees for time spent preparing the Amended Complaint.  Defendants contend that Plaintiffs expended 30.6 hours of time performing work in anticipation of filing the Amended Complaint, although Defendants do not provide a total amount for which they request a deduction.  (Defs.' Opp'n at 32 [Doc. No. 266]) (citing North Dakota Invoices at P006460-006466).   After reviewing the invoice pages to which Defendants object, and excluding entries that are deducted for other reasons, the Court will deduct $11,329.25 from Plaintiffs' fee request, representing approximately 27.25 hours of time.

Fifth, Defendants assert that Plaintiffs should not be allowed to recover fees incurred pursuing unsuccessful claims.  (Id.)  In particular, Defendants contend that Plaintiffs' Due Process claim alleging a state constitutional defect in the legislative process of enacting the NGEA, which was dismissed on Defendants' Motion for Partial

Judgment on the Pleadings, was distinct from the claims upon which Plaintiffs prevailed.

(Id.)  Defendants point to a handful of invoice pages which they contend reflect "over 20

hours related to research and conferring" about that claim.  (Id.)  They also generally

state that Plaintiffs billed roughly $110,000 to prepare and argue their opposition to

Defendants' Motion for Partial Judgment on the Pleadings.  (Id. at 6.)  In response,

Plaintiffs argue that they are entitled to their fees generated in responding to that

"critical" motion because the Court only granted Defendants relief as to Plaintiffs'

secondary claims and did not find those claims to be frivolous.  (Pls.' Second Reply at

14-15 [Doc. No. 269].)

The Court finds that Plaintiffs are not entitled to their fees related to pursuing their

unsuccessful Due Process claim.  As stated by the Supreme Court:

> In some cases a plaintiff may present in one lawsuit distinctly different
> claims for relief that are based on different facts and legal theories.  In such
> a suit, even where the claims are brought against the same defendants—
> often an institution and its officers, as in this case—counsel's work on one
> claim will be unrelated to his work on another claim.  Accordingly, work
> on an unsuccessful claim cannot be deemed to have been "expended in
> pursuit of the ultimate result achieved."  Davis v. County of Los Angeles, 8
> E.P.D. ¶ 9444, at 5049 (C.D. Cal.1974). The congressional intent to limit
> awards to prevailing parties requires that these unrelated claims be treated
> as if they had been raised in separate lawsuits, and therefore no fee may be
> awarded for services on the unsuccessful claim.

Hensley, 461 U.S. at 434–35; see Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th

Cir. 2000) (stating that issues on which a plaintiff loses that are unrelated to those on

which the plaintiff has won should be treated as a separate case for which no fees can be

awarded).  Here, Plaintiffs' successful Commerce Clause claim alleged that Minnesota

Statutes § 216H.03, subd. 3(2)-(3), discriminated against and unduly burdened interstate

commerce.  (See Am. Compl. ¶¶ 85-98.)  Their unsuccessful Due Process claim, however, alleged that Plaintiffs had a property interest in the productive use of coal used in the facilities that are subject to the NGEA, and in the generation and transmission of low-cost energy from those facilities and pursuant to agreements that are subject to the NGEA, but that Plaintiffs were deprived of those property interests by the enactment of Minnesota Statutes § 216H.03, subd. 5, 7.  (Id. ¶¶ 134-43.)  According to Plaintiffs, those subdivisions grant special privileges to private Minnesota corporations, and their enactment constituted a defect in the legislative process.  (See id.)  While these claims both allege the unconstitutionality of the NGEA, they are based on distinct legal theories such that they should be treated as if they had been raised in separate lawsuits. Therefore, the Court declines to award Plaintiffs their fees for services rendered on the

unsuccessful Due Process claim,[18] which the Court determines to be in the amount of

$11,582.75.[19]

Sixth, Defendants assert that Plaintiffs should not be allowed to recover fees

incurred while engaging in unsuccessful motion practice.  (Defs.' Opp'n at 32-33 [Doc.

No. 266].)  In particular, Defendants assert that Plaintiffs should not be able to recover

for time spent attempting to depose sitting Minnesota Public Utilities Commission

("MPUC") members (including responding to Defendants' motion to quash the

---

[18]     Defendants also state in passing that Plaintiffs failed to distinguish between time
spent on Commerce Clause issues and time spent on their preemption claim.  (Defs.'
Opp'n at 25 [Doc. No. 266].)  To the extent that Defendants are implying that Plaintiffs
are not entitled to the portion of fees associated with the preemption claims because those
claims "failed," that argument is rejected.  The Summary Judgment Order did not grant
Defendants relief on the preemption claim; it merely declined to analyze the preemption
claims because it granted summary judgment on alternative grounds—i.e., Plaintiffs'
Commerce Clause claim.  Heydinger I, 15 F. Supp. 3d at 908.  Accordingly, the Court did
not find that the preemption claims failed, so the fees associated with those claims need
not be separated.

        In opposition to the reasonableness of Plaintiffs' district court fee petition,
Defendants also cite Soo Line, 38 F. Supp. 2d at 1101, for the proposition that attorneys'
fees are unavailable for preemption claims.  This argument is addressed earlier in this
Court's discussion of the avoidance exception.

[19]     This number is based in part on the entries referring to Plaintiffs' research of the
Due Process claim and their addition of that claim to the Amended Complaint, as found
on invoice pages identified by Defendants.  (See Defs.' Opp'n at 32 [Doc. No. 266];
Boyd Aff. [Doc. No. 257], Ex. 7, at 6461-65.)  Where an entry included work on other
matters, the Court approximated the time spent on the Due Process-related services,
arriving at an estimate of $6,799.75.  The number is also based in part on an
approximation of the portion of services devoted to defending the Due Process claim
against Defendants' Motion for Judgment on the Pleadings.  Plaintiffs did not challenge
Defendants' $110,000.00 estimate, but only 2 pages of Plaintiffs' 46-page argument were
devoted to the Due Process claim.  (See Pls.' Opp'n to Defs.' Mot. for Partial J. on the
Pleadings at 44-45 [Doc. No. 17].)  Accordingly, the Court has pro-rated the overall
number to arrive at an appropriate deduction of $4,783.00 (2/46 x 110,000.00), for an
overall deduction of $11,582.75.

subpoenas for those individuals) because Plaintiffs ultimately withdrew their request, or

for conducting third-party discovery against the Minnesota Pollution Control Agency

("MPCA") after summary judgment had been briefed and argued. (Id.)  In response,

Plaintiffs argue that they had a right to depose the MPUC members because they were

identified in Defendants' Rule 26(a)(1) initial disclosures as possessing discoverable

information at the time Plaintiffs noticed the depositions.  (Pls.' Second Reply at 15

[Doc. No. 269].)  They also contend that the MPCA-related fees are appropriately

recovered given that the Court ultimately granted Plaintiffs' motion to compel discovery

from the MPCA.  (See id.)

The Court finds that Plaintiffs are entitled to recover their fees related to

conducting these discovery matters.  Parties are entitled to discovery from the individuals

identified in the opposition's Rule 26(a)(1) disclosures as likely to have discoverable

information, and the MPUC members were listed in Defendants' disclosures at the time

Plaintiffs noticed their depositions.  (See Order of 10/24/13 at 4 [Doc. No. 200].)

Although the parties ultimately resolved their dispute at the hearing on Defendants'

motion to quash the deposition notices, (see id.), that fact does not render Plaintiffs'

attempts to obtain discoverable information unnecessary.  And, it appears that the reason

that Plaintiffs were seeking discovery from the MPCA while the summary judgment

motions were pending was because Defendants first disclosed witnesses from that agency

on the last day of fact discovery.  (See id. at 5.)  At the time of the depositions, those

individuals were potential trial witnesses for Defendants and, had the Court denied the

pending summary judgment motions, the parties would have proceeded to trial.

Accordingly, the depositions cannot be deemed unnecessary even though the subsequent Summary Judgment Order rendered the depositions unnecessary.[20]

Seventh, Defendants assert that Plaintiffs may not recover fees for work "not directly related to this litigation."  (Defs.' Opp'n at 34-35 [Doc. No. 266].)  Within this category, Defendants include Plaintiffs' entries for the following:  reviewing a petition for certiorari in another case, Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070 (9th Cir. 2013), cert. denied, 134 S. Ct. 2875 (2014); drafting summaries of the status of this litigation for client updates and biennial reports; communicating about appellate briefs and discovery motions that purportedly were not pending in this litigation at the time they were billed; and working on matters pending before the MPUC.  (Id.) Regarding Plaintiffs' appellate invoices, Defendants again object to Plaintiffs' entries for reviewing developments in Rocky Mountain Farmers Union, (Defs.' App. Br. at 17), and they also object to entries for work performed before the district court that appear in the appellate invoices.  (Id.).

---

[20]    Defendants also briefly argue that Plaintiffs should not be able to recover their fees and costs associated with obtaining pro hac vice admissions for eight out-of-state attorneys because those attorneys did not argue at hearings, take depositions, or "otherwise actively participate in the court litigation on this case."  (Defs.' Opp'n at 33-34 [Doc. No. 266].)  However, the case relied upon by Defendants, Orr v. Nelson, 874 F. Supp. 998 (D. Neb. 1995), actually supports Plaintiffs' position.  In that case, the court disallowed recovery for the fee paid to permanently admit two attorneys to the court.  Id. at 1005.  However, the court approved an award for the amount that would have been paid for "a one-time admission."  Id. at 1005-06.  Here, Plaintiffs are seeking to recover fees and expenses associated with obtaining "one-time" admissions.  And, Plaintiffs have stated that these attorneys were able to assist Plaintiffs' primary counsel in obtaining information and documents and analyzing issues relevant to those attorneys' particular clients. (Pls.' Second Reply at 20-21 [Doc. No. 269].)  Accordingly, it appears that the attorneys at issue were actively participating in this case.

In response, Plaintiffs insist that it was appropriate for them to review filings dealing with related issues in other cases and to provide updates of the pending litigation to their clients, (see Pls.' Second Reply at 18 [Doc. No. 269]; see also Pls.' App. Reply at 9-10), and the Court agrees.  Both types of activities are related to this litigation and are the kind of services ordinarily provided to a client.[21]   However, Plaintiffs do not address the remainder of Defendants' objection to this category of fees—i.e., entries for communicating about briefs and motions that purportedly were not pending in this litigation and work related to matters pending before the MPUC.  The Court has reviewed the docket and similarly finds no pending appellate or discovery matters for the time period at issue.  Absent any explanation from Plaintiffs, the Court finds it appropriate to deduct these fees, in the amount of $1,366.50, from Plaintiffs' district court fee request.  (See Boyd Aff. [Doc. No. 257], Ex. 7, at 6469, 6520.)  Likewise, Plaintiffs have offered no explanation to tie the entries related to activities conducted before the MPUC to this case, and the Court will deduct those fees, in the amount of $3,042.50, from Plaintiffs' district court fee request.  (See id., Ex. 7, at 6472, 6476-77, 6480, 6482, 6486, 6506, 6531, 6666.)

In addition, Plaintiffs have not explained why fees related to their district court fee petition are included in their appellate invoices.  It appears that the district court fee

---

[21]       Some of the Rocky Mountain Farmers Union appellate invoice entries to which Defendants specifically object, (Defs.' App. Br. at 17), involve work that the Court finds excludable on another basis.  The entries for 9/8/14 and a portion of 9/20/14, (see Boyd App. Aff. [Doc. No. 281], Ex. A), are excludable as they involve work with supporting amici, discussed in greater detail below.  But in general, Plaintiffs' research involving this particular case is appropriately included in their fee petitions.

petition fees were incurred contemporaneously with Plaintiffs' appellate work.  (See, e.g., Boyd Aff. [Doc. No. 257], Ex. 7, Entry for 5/22/14 (THB) (listing work performed in connection with the appeal and work performed in connection with Plaintiffs' fee petition to the district court).  Having compared the district court and appellate invoices, the Court finds no apparent duplication of the entries for Plaintiffs' district court fee petition work—all such entries appear in Plaintiffs' invoices submitted in support of their appellate fee petition.  (Compare Boyd Aff. [Doc. No. 257], Ex. 7, Entries for 5/22/15 (THB), (BAL), with Boyd App. Aff. [Doc. No. 281], Ex. A, Entries for 5/22/15 (THB), (BAL).)  In other words, Plaintiffs' district court invoices do not include fees for work related to the district court fee petition; there is no duplication between the district court and appellate fee petitions.  By the Court's calculation, the total amount of district court fee petition work found in the appellate invoices totals $15,771.12.   Because this work was not related to the appellate proceedings, the Court deducts this amount from the award of appellate fees.  The Court addresses below whether these fees are recoverable in connection with Plaintiffs' fee petition work before the district court.

Eighth, Defendants argue that Plaintiffs are not entitled to fees for time spent assisting amici.  (Defs.' Opp'n at 35-36 [Doc. No. 266]; Defs.' App. Br. at 17.)  However, Defendants' citation to the Eleventh Circuit's opinion in Glassroth v. Moore actually supports the contrary position:

> The district court ought not allow the plaintiffs any compensation for time their counsel spent in connection with amicus briefs supporting their position.  The plaintiffs' fee application includes a request for reimbursement for work that lead counsel for the plaintiffs, Ayesha N. Khan, did in relation to a number of amicus briefs filed in support of

plaintiffs' position. Her time records indicate that she spent that time enlisting various organizations to appear as amici; suggesting potential signatories for the briefs; working on, supervising, and reviewing the amicus briefs; and seeing that they were mailed on time.

It comes as no surprise to us that attorneys for parties solicit amicus briefs in support of their position, nor are we shocked that counsel for a party would have a hand in writing an amicus brief. . . . Even where such efforts are successful, however, they should not be underwritten by the other party. An organization or group that files an amicus brief on the winning side is not entitled to attorney's fees and expenses as a prevailing party, because it is not a party. We will not allow that result to be changed by the simple expedient of having counsel for a party do some or all of the amicus work. To pay a party for such work would encourage the practice, which we are loathe to do. The district court should not award plaintiffs any attorney's fees or expenses for work done in connection with supporting amicus briefs. (A reasonable amount of time spent reading and responding to opposing amicus briefs is, of course, compensable.)

347 F.3d 916, 918-19 (11th Cir. 2003) (emphasis added). Here, as Plaintiffs note, Defendants initiated the involvement of amici curiae in this lawsuit. (Pls.' Second Reply at 19 [Doc. No. 269].) Accordingly, under Glassroth, Plaintiffs are entitled to a reasonable amount of fees for time spent responding to those opposing amici briefs. They are not entitled to compensation for time spent coordinating with amici. Based on the Court's review of the district court invoices identified by Defendants, (Defs.' Opp'n at 35 [Doc. No. 266]), a deduction in the amount of $23,539.86 is appropriate. Defendants did not identify the appellate invoices to which they object on this basis. The Court has thoroughly reviewed the appellate invoices and finds that a deduction of $29,343.40 is appropriate for Plaintiffs' time spent coordinating with supporting amici.

Ninth, Defendants contend that Plaintiffs may not recover fees for time spent consulting with an individual whose identity has not been disclosed. (Id. at 36; Defs.'

App. Br. at 18.)  Defendants point to over 30 entries in Plaintiffs' district court invoices that detail the subject of these consultations, but not the individual's name, (Defs.' Opp'n at 36 [Doc. No. 266]), and seven entries in the appellate court invoices.  (Defs.' App. Br. at 18.)  Plaintiffs, on the other hand, argue that they are entitled to their fees in working with this individual, whom they identify as a "non-testifying expert."  (Boyd Aff. ¶ 18 [Doc. No. 257]; see Pls.' Second Reply at 19 [Doc. No. 269].)

The only support for Defendants' objection is the proposition that the fee applicant bears the burden of documenting the appropriate hours expended.  (See Defs.' Opp'n at 36 [Doc. No. 266].)  While this is true, the Court finds that Plaintiffs have met their burden in this instance.  Although the name of the consulting expert has been redacted from the billing statements, the time entries provide a detailed description of the subject matter of the consultations (e.g., "details of federal laws and regulations pertaining to the Midwest Independent Transmission System Operator and potential preemptory effect on the Next Generation Energy Act" and "ongoing analysis of preemption and Federal Energy Regulatory Commission issues").  Given the complex and technical nature of this case, it is reasonable to expect that Plaintiffs' counsel would have need for consultation with an expert on such issues.

Lastly, Plaintiffs seek additional reimbursement of the attorneys' fees and costs they incurred in bringing their Motion for Attorneys' Fees before this Court and the Eighth Circuit. (Pls.' Second Mem. at 24 [Doc. No. 253]; Pls.' App. Br. at 19.)  Such compensation is permissible.  Jones v. MacMillan Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982).  While Plaintiffs' district court-related invoices did not include

60

fee petition work performed before the district court, their invoices submitted to the

Eighth Circuit included the fee petition work performed before the district court, as the

timing of this work occasionally overlapped with the timing of appellate deadlines and

Plaintiffs had not previously submitted invoices for this work.  (Compare Boyd Aff.

[Doc. No. 257], Ex. 7, with Boyd App. Aff. [Doc. No. 281], Ex. A.)

As noted, the Court has reviewed the appellate invoices in detail and finds that

$15.771.12 in fees is attributable to work performed on the district court fee petition.

Accordingly, this amount is removed from the total amount of appellate fees and is

instead awarded in connection with the district court fees.  Although compensation for

Plaintiffs' appellate fee petition work is permissible, see Jones, 685 F.2d at 239, the Court

finds that Plaintiffs are adequately compensated by the total award granted in this Order.

Plaintiffs' motion is therefore denied in part as to their request for additional fees

incurred in preparing their appellate fee petition.

Based on the foregoing, the Court finds that the proper lodestar calculation in this

case is $1,005,417.26 for district court-related work and $250,094.17 for appellate court-

related work.  The total amount in attorneys' fees is 1,255,511.43.

### F.    Other Factors

"[T]he 'lodestar[]' is presumed to be the reasonable fee contemplated by § 1988."

City of Riverside v. Rivera, 477 U.S. 561, 568 (1986).  However, as discussed above, the

lodestar may be adjusted upward or downward.  In making this determination, the

"results obtained" factor is the most important consideration.  Jenkins v. Missouri, 127

F.3d 709, 716 (8th Cir. 1997) ("The most important factor in determining what is a

reasonable fee is the magnitude of the plaintiff's success in the case as a whole."). And, in fact, it is the only factor addressed by Defendants in this case. In particular, Defendants argue that the relief awarded to Plaintiffs—i.e., an injunction—does not change the legal position of the parties. (Defs.' Opp'n at 8-13, 39-41 [Doc. No. 266]; Defs.' App. Br. at 19-20.) According to Defendants, they never interpreted or enforced the NGEA in the manner feared by Plaintiffs, and Plaintiffs have publicly blamed any harm they have suffered on market conditions and other regulations of coal-fired plants (such as the Environmental Protection Agency's 2012 mercury and air toxins standards, and the regulations for new power generating facilities that were proposed in 2013). (Defs.' Opp'n at 9-13 [Doc. No. 266].) Thus, Defendants argue, the relief awarded has not materially altered their behavior and cannot sustain Plaintiffs' "prevailing party" status. (See id. at 39-40.)

The Court does not agree. First, the Court already rejected, in the first round of briefing on the attorneys' fees request, Defendants' argument that Plaintiffs obtained a mere technical victory. Instead, the Court found that "the declaratory and injunctive relief preventing Defendants from enforcing [Minnesota Statutes § 216H.03, subd. 3(2)-(3)] necessarily alters Defendants' behavior toward Plaintiffs, to Plaintiffs' benefit." Heydinger II, 2014 WL 7157013, at *3.

Second, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation . . . ." Hensley, 461 U.S. at 435. Through this lawsuit, Plaintiffs sought to have Minnesota Statutes § 216H.03, subd. 3(2)-(3), declared unconstitutional

and to have Defendants enjoined from enforcing those statutory provisions, and that is

exactly the relief they were awarded.  See Heydinger I, 15 F. Supp. 3d at 910, 919.

Accordingly, Plaintiffs obtained "excellent results" and, except for the amounts deducted

above, should receive the full lodestar amount.

Third, fee awards under § 1988 need not be proportionate to the amount of

damages a plaintiff recovers nor conditioned upon an award of damages.  City of

Riverside, 477 U.S. at 574.  Rather, while "[t]he amount of damages a plaintiff recovers

is certainly relevant to the amount of attorney's fees to be awarded under § 1988," id., it

is "'intended that the amount of fees awarded . . . not be reduced because the rights

involved may be nonpecuniary in nature,'" id. at 575 (quoting S. Rep. No. 94-1011, at 6

(1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913) (emphasis in original); see Moore v.

City of Des Moines, 766 F.2d 343-44, 346 (8th Cir. 1985) (affirming the district court's

award of attorneys' fees and expenses totaling $195,433.59 plus interest pursuant to

§ 1988 after entering a consent decree).  Indeed, "[o]ne of the benefits of successful

litigation under 42 U.S.C. § 1983, at least where . . . that litigation results in declaratory

and injunctive relief, is that a standard of conduct is laid down for public officials, a

standard which will in the future benefit all those persons in a situation similar to [the]

plaintiff's."  Fast v. Sch. Dist. of Ladue, 728 F.2d 1030, 1034 (8th Cir. 1984).

Here, Plaintiffs have submitted evidence that the relief they obtained benefited not

only themselves, (see, e.g., Raatz Decl. ¶ 18 [Doc. No. 255] (stating that, "but for the

Order, [Plaintiff Basin Electric] would have had to incur $28 million per year for a new

generation source" to satisfy its members' needs)), but also has impacted the power

industry as a whole, (see Pls.' Second Mem. at 13-14 [Doc. No. 253] (citing briefs filed

in this case in support of Plaintiffs' position)).  Therefore, in addition to any individual

benefit Plaintiffs receive from the permanent injunction, the Court's Order also will

benefit all similarly-situated persons or entities.  For these reasons, the Court finds no

reason to reduce the amount of fees requested based on the nature or extent of the results

obtained by Plaintiff in this case.  Rather, it appears that the results obtained justify the

amount of fees calculated by the Court under the lodestar method.

### G.    Costs

An award of reasonable attorneys' fees can include reasonable out-of-pocket

expenses of the kind normally charged to clients by attorneys.  Pinkham v. Camex, Inc.,

84 F.3d 292, 294-95 (8th Cir. 1996) (citations omitted).  As a preliminary matter, this

Court must determine the amount of costs Plaintiffs seek.

### 1.    District Court-Related Costs

In their moving papers, Plaintiffs state that they have incurred "various taxable

and nontaxable costs and expenses" in the amount of $67,489.08 in the district court

proceedings in this matter, including the following:

| | |
|---|---|
| Computerized legal research | $13,069.28 |
| Delivery services | $664.00 |
| Express mailing | $27.16 |
| Photocopying | $6,279.75 |
| Postage | $62.42 |
| Filing fees | $650.00 |
| Depositions and transcripts | $14,994.15 |
| Expert witness fees | $31,182.42 |
| Copying charges for subpoenaed documents | $559.90 |

| Total | $67,489.08 |
|-------|-----------|

(Pls.' Second Mem. at 23-24 [Doc. No. 253].)  However, they claim "nontaxable costs" only in the amount of $60,812.23.  (Id. at 24.)  The discrepancy, $6,676.85, is the same amount awarded by the Clerk of Court in its Cost Judgment for transcript fees.  (Cost Judgment at 2 [Doc. No. 238].)  The Court denied Defendants' subsequent Motion for Review of Taxation of Costs, (Order of 12/15/14 at 15 [Doc. No. 243]), rendering that Cost Judgment final.  Accordingly, the Court will deduct that amount from the current request because it already is required by the Cost Judgment.  In addition, the Court will deduct the $650 in filing fees that are requested, because those fees also were awarded in the Cost Judgment.  (Cost Judgment at 2.)  Although the total amount of costs after these deductions is $60,162.23, the exhibit submitted by Plaintiffs in support of their request for nontaxable costs states that the "total non-taxable costs requested" is $59,961.13. (Boyd Aff. [Doc. No. 257], Ex. 18.)  In the absence of any explanation for this discrepancy, the Court will consider this number to be the actual amount requested.

Plaintiffs claim that the costs they seek to recover are reasonable and customary out-of-pocket expenses ordinarily charged to clients.  (Pls.' Second Mem. at 24 [Doc. No. 253].)  Defendants, on the other hand, challenge the amounts requested for (1) having court reporters transcribe publicly available recordings of legislative hearings ($3,139.30), and (2) computer-based legal research ($13,069.28).  (Defs.' Opp'n at 38-39 [Doc. No. 266].)

As for transcribing legislative history, the Court agrees with Plaintiffs.  The legislative history of the NGEA was relevant to this lawsuit, and although Defendants

claim that it was "unnecessary" for Plaintiffs to hire court reporters to transcribe the hearings because there were less expensive options available, the only option suggested by Defendants was the use of "internal staff."  (Id. at 38.)  However, Defendants offer no support for the proposition that it would have been less expensive for Plaintiffs to use internal staff.  Because the Court finds that Plaintiffs' method of presenting the legislative history was not unreasonable and is a cost that would ordinarily be charged to a client, the Court will not deduct those costs from Plaintiffs' request.

As for computerized legal research, the Court agrees with Defendants.  The Eighth Circuit has stated that such expenses are not recoverable when sought under a fee-shifting statute.  Compare Standley v. Chilhowee R-IV School Dist., 5 F.3d 319, 325 (8th Cir. 1993) ("[T]he law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award [under § 1988]."), with In re UnitedHealth Grp. Inc. v. Shareholder Derivative Litig., 631 F.3d 913, 918 (8th Cir. 2011) (finding that online research costs are recoverable when being reimbursed under a negotiated settlement).  See also Hynes v. McGoldrick, Inc., Civ. No. 11-3512 (JRT/JSM), 2013 WL 6328867, at *5 (D. Minn. Dec. 5, 2013) (disallowing costs for computerized legal research because they were sought under a fee-shifting statute).  Although Plaintiffs may be correct that it would be appropriate to revisit the question of whether the cost of computerized legal research is compensable under § 1988, this Court is bound by the current Eighth Circuit precedent and must deduct the amount requested for computerized legal research ($13,069.28) from

Plaintiffs' cost award.  Accordingly, the Court finds that Plaintiffs are entitled to an award of costs for their work before the district court in the amount of $46,891.85.

### 2.   Appellate Court-Related Costs

With respect to costs incurred in the appellate proceedings, Plaintiffs claim the following:

| | |
|---|---:|
| Computerized legal research | $1,391.54 |
| Delivery services | $80.00 |
| Express mailing | $241.05 |
| Photocopying | $1,565.52 |
| Filing fees | $721.00 |
| Professional Services Rendered (Experts) | $5,020.00 |
| Parking | $29.00 |
| Certificate of Good Standing | $28.15 |
| Total | $9,076.26 |

The only category of appellate court-related costs to which Defendants specifically object is computerized legal research.  (Defs.' App. Br. at 18.)  For the reasons noted above, the Court must deduct $1,391.54 from Plaintiffs' requested appellate court-related cost award.  Accordingly, the Court finds that Plaintiffs are entitled to an award of costs for their work before the appellate court in the amount of $7,684.72.  Adding the district court and appellate court costs together results in a total cost award of $54,576.57.

## IV.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs [Doc. No. 212] is **GRANTED IN PART AND DENIED IN PART**, as follows:

      a.   With respect to the district court-related fees and costs, the Court awards Plaintiffs their attorneys' fees in the amount of $1,005,417.26 and costs in the amount of $46,891.85.

2.  Plaintiffs'/Appellees' Motion for Attorneys' Fees Pursuant to 8th Cir. R. 47C, referred to this Court by the Eighth Circuit, (North Dakota v. Heydinger, Nos. 14-2156 & 14-2251 (8th Cir. July 27, 2016)), is **GRANTED IN PART AND DENIED IN PART**, as follows:

      a.   With respect to the appellate court-related fees and costs, the Court awards Plaintiffs their attorneys' fees in the amount of $250,094.17 and costs in the amount of $7,684.72.

3.  Defendants, in their official capacities, shall remit to Plaintiffs a total amount of $1,310,088.00 for attorneys' fees and costs.

4.  Plaintiffs'/Appellees' Motion to File Under Seal Exhibits to the Affidavit of Thomas H. Boyd in Support of Appellees' Motion for Attorneys' Fees Pursuant to 8th Cir. R. 47C, referred to this Court by the Eighth Circuit, (North Dakota v. Heydinger, Nos. 14-2156 & 14-2251 (8th Cir. July 27, 2016)), is **GRANTED**.

Dated:  September 29, 2016          s/Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge